[No. 1303.   Decided January 14, 1895.]

ALBERT W. RICHARDSON, *Respondent, v.* THE CARBON HILL COAL COMPANY, *Appellant.*

PLEADING—JOINDER OF CAUSES OF ACTION—ERRONEOUS ADMISSION OF EVIDENCE—HOW CURED—MASTER AND SERVANT—INJURY TO EMPLOYE—MALPRACTICE OF PHYSICIAN.

Where a complaint sets forth two causes of action without separately stating them, it is not error to refuse to strike out portions of the complaint, when the two causes could be properly joined, but the proper remedy is a motion to require plaintiff to separately state his several causes of action.

Where one of two causes of action, which had been joined in one complaint, has been held insufficient on appeal, it is error, upon a retrial of the cause upon the same complaint, after reversal, to permit the introduction of evidence supporting the cause of action which has been ruled upon adversely by the appellate court.

Under such circumstances, a charge to the jury to disregard entirely such cause of action not properly in the case, is not sufficient to withdraw the objectionable evidence from their consideration, when the jury is not instructed to disregard all, or any particular portion, of the evidence introduced to support that part of the case.

In an action for damages on account of negligent and unskillful surgical treatment, there is sufficient evidence to show negligence of

NOTE—The question of the liability of an employer for negligence of a physician engaged by him to treat injured employes where the physician was engaged as a mere matter of kindness to the employes, is considered in a note to *William-son v. Louisville Industrial School,* (Ky.) 23 L. R. A. 200, and in the later cases of *Union Pac. R. R. Co. v. Artist,* 23 L. R. A. 581, and *Eighmy v. Union Pac. R. R. Co.,* (Iowa) 27 L. R. A. 296.

the surgeon, when it appears that the patient's hip was dislocated and his femur bone fractured about eight inches below the hip ; that the head of the femur had been torn from its socket and pushed upwards and backwards, producing a lump on the hip which was easily discernible ; that the surgeon's attention was called to the painful condition of the hip, but that he never examined it, claiming that the pain was caused by the broken bone ; and that the surgical treatment was directed solely to the fracture of the femur, which, under the appliances used, properly healed.

Where a hospital is maintained and a physician employed by a corporation for the purpose of caring for sick and injured employes, the expenses being provided for out of certain moneys retained from the monthly wages of the employes, and the corporation makes no profit out of the undertaking, but conducts it as a charitable institution, it is not liable for malpractice or negligence on the part of the physician, but is responsible only for want of ordinary care in selecting him.

*Appeal from Superior Court, Pierce County.*

*John P. Judson,* for appellant.

*Crowley, Sullivan & Grosscup* and *C. W. Seymour,* for respondent.

The opinion of the court was delivered by

ANDERS, J.—The appellant is a corporation, and, in the year 1890, and for some years prior thereto, it owned and operated certain coal mines at Carbonado in this state. It was also the owner of a narrow-gauge railroad, which it constructed and used for the purpose of transporting its coal to a station on the Northern Pacific railroad about three-quarters of a mile distant from its mines.

On or about the 24th day of January, 1890, the respondent was employed by the company to assort, or clean, coal at its coal bunkers, with the understanding that he should work whenever required, and be paid by the day when engaged at said work. On April 15, 1890, the respondent, while riding through a tunnel on a brake beam in front of one of the company's engines, was struck by a projecting rock and thereby seriously injured. He was taken to the house of his brother-in-law, and there treated by Dr.

Garner, a physician and surgeon, who had been theretofore employed to treat professionally all persons who might be injured while in the service of the company. Upon examination the doctor found that the respondent's left leg was broken about eight inches from the hip joint, but did not discover any other injury in or about the hip. The doctor treated this fracture until about the middle of July, at which time he deemed the respondent cured, the fractured bones being then united.

Subsequently, the respondent instituted an action against the coal company to recover damages for the injury sustained while riding upon the locomotive engine, and also for further injury by reason of negligent and unskillful treatment by Dr. Garner. The cause proceeded to trial, and, at the close of the plaintiff's testimony, on motion of the defendant (which motion was in form a motion for a non-suit) the court directed the jury to find a verdict for the defendant. From this order and judgment the plaintiff appealed.

Upon the trial here this court determined that the plaintiff was not entitled to recover for the injury sustained in the tunnel, because it was apparent from the record that he was himself guilty of contributory negligence. As to the first cause of action the ruling of the trial court was therefore sustained. But, although we found the proof too uncertain and meagre to determine satisfactorily what were the rights of the plaintiff under his cause of action for injuries sustained on account of alleged negligent and unskillful surgical treatment, we came to the conclusion that the evidence upon that branch of the case should have been submitted to the consideration of the jury, and accordingly remanded the cause for a new trial, with leave to file new pleadings. See 6 Wash. 52, (32 Pac. 1012).

The plaintiff thereupon filed an amended complaint, stating, but not separately, the same causes of action which were set up in his original complaint. The defendant moved the court to strike out certain paragraphs and portions of the complaint on the ground that the same were irrelevant, immaterial and redundant. This motion was

overruled, and the defendant excepted.    Thereafter the defendant answered, and the cause was tried, resulting in a verdict and judgment for plaintiff.

It appears that the appellant corporation, in conducting its business, usually employed several hundred men.    And the proof shows that it was the custom of the paymaster of the company to retain one dollar per month from the wages of each employe, and that the money so realized was kept as a special fund for the payment of the expenses of the hospital and the salary of the physician employed to attend and treat sick and disabled employes and their families, and was disbursed by him whenever required for those purposes. None of the money was used by the company in transacting its business, nor did it in any way derive any profit from it. The respondent paid one dollar per month (which was charged to his account as "hospital") out of his wages while in the service of the company, without objection, and without asking for any information as to the purpose for which it was to be used, but he seems to have understood from others that it was to be applied towards the payment of the doctor in case of sickness or injury of employes.

We think the court committed no error in refusing to strike out portions of the complaint, on the ground stated in the motion.    Where a complaint sets forth two causes of action, which may properly be joined, without separately stating them as required by the code, the proper remedy is a motion to require plaintiff to make his complaint more definite and certain by stating separately his several causes of action.    Pomeroy, Code Remedies, § 447 ; Boone, Code Pleading, § 266.

And, besides, the paragraphs sought to be stricken out are all essential allegations in the only cause of action stated in the complaint, which, according to the claim of appellant, has not already been determined by this court.    The paragraphs objected to could not be stricken out without giving the motion the effect of a general demurrer, for, without them, the complaint would state no cause of action for surgical malpractice.

This case was tried by the court below upon the theory that the complaint states two causes of action, and that the first cause of action, based upon the alleged negligence of the defendant by reason of which plaintiff was injured, had been determined adversely to the plaintiff by this court. It was the rule contended for by counsel for the defendant, and he here insists that the court erred in permitting counsel for the plaintiff, in opening his case, to state to the jury, over defendant's objections, certain facts and circumstances which he expected to prove to sustain the first cause of action, and in permitting the plaintiff to introduce evidence before the jury to prove the facts therein alleged. Just what the remarks of counsel were to which objection was made by the defendant, we are unable to ascertain, as they do not appear in the record, and we are therefore unable to determine whether they were improper and prejudicial or not. But we think it was error, under the circumstances, to permit evidence to be introduced showing the rate of speed at which the engine upon which the plaintiff was seated when he was injured was driven into the tunnel by defendant's underground foreman, and the outcry of the plaintiff when he was thrown to the ground, and other like matters. All such testimony was clearly irrelevant to the issues which were finally submitted to the jury, and must have been prejudicial to the defendant. Indeed, the learned trial judge seems to have come to the conclusion that this evidence was all irrelevant, for he said: "Before going to the jury on the case, counsel for the defendant may move to have all this testimony stricken out on his motion, so far as this court can see now." But counsel did not choose to move to strike it out and thereby, if successful, waive his exceptions, but preferred to stand upon his exceptions, as he had a perfect right to do. It is by no means certain that, if this evidence had been stricken out, the impression produced by it upon the minds of the jury would have been removed. It is far easier to produce an impression upon the mind than it is to eradicate it, and for that reason, if for no other, courts should spare no pains to prevent illegal testimony from going to the jury.

Of course it was proper, perhaps necessary, for the plaintiff
to show the character and extent of the injuries which Dr.
Garner undertook to treat, and also where he was, and what
he was doing, when he was injured, as those were evidently
pertinent and relevant matters.

After the plaintiff had rested, the defendant moved for a
non-suit as to the first cause of action, on the ground of con-
tributory negligence on the part of plaintiff. A non-suit
was denied, but the court thereupon ruled that the defendant
was called upon to answer that part of the case only which
pertained to the treatment of plaintiff's injuries. Subse-
quently the court charged the jury to disregard entirely the
first cause of action, but as they were not instructed to disre-
gard all, or any particular portion of the evidence which
had been introduced to sustain that part of the case, we
hardly think that the objectionable evidence can be said to
have been thereby fully withdrawn from the consideration
of the jury. In our opinion this charge of the learned judge
was too general to convey to the minds of the jury, with any
degree of certainty, what was really intended by the court.
In fact, by its terms it left the jury to determine for them-
selves what evidence they were to disregard, instead of point-
ing it out to them, and was, therefore, liable to confuse and
mislead.

It is contended on the part of appellant that the verdict
and judgment cannot be sustained, (1) because the evi-
dence fails to show that the respondent's injuries were neg-
ligently or unskillfully treated by Dr. Garner; (2) because
it clearly appears from the evidence that the appellant never
employed or agreed to employ the doctor to treat said inju-
ries; and (3) because the proofs show no liability on the
part of appellant for the injuries complained of, even if it
were shown that the doctor was employed by it and was neg-
ligent in the discharge of his professional duties towards the
respondent.

As already stated, Dr. Garner's treatment of the respond-
ent was directed solely to the fracture of the femur. And
it does not appear from the evidence that the fracture itself

was either negligently or unskillfully treated. The ordinary appliances were used and the result was a union of the broken bone, without deformity of the limb, so far as the testimony discloses. But it is claimed by the respondent that his hip was dislocated by the same accident which broke his leg, and that the dislocation was so apparent that nothing but gross negligence or incompetency could have prevented the doctor from discovering it. That respondent's hip was dislocated at the time of the trial was not disputed even by Dr. Garner himself. Nor was it disputed that the dislocation was permanent and incurable. The head of the femur had been torn from its socket and pushed upwards and backwards, producing a lump on the hip which was easily discernible, and which the respondent and those who attended him say was there when Dr. Garner was treating him, and that the doctor's attention was several times called to the fact that the respondent's hip was painful, but that he never examined it, but always said the pain was caused by the broken bone. The doctor testified that the lump spoken of was not present while he was treating the patient, because, if it had been, he could not have failed to see it when he applied the splints to the broken leg. His conclusion was that the dislocation must have been caused by the respondent falling upon the sidewalk when he was walking on crutches, and one of them broke and threw him down. The testimony, however, of those who saw him fall shows pretty clearly that his hip was not seriously injured, if at all, at that time. We therefore conclude that there was sufficient evidence to justify the jury in finding the doctor guilty of negligence.

It is conceded in this case that no express contract was made between the company and the respondent in relation to his treatment or care in case he became sick or was injured. And it therefore follows that if the appellant was bound to furnish a surgeon to treat respondent's injuries it was by virtue of such a contract as the law implies from the acts of the parties, and the surrounding circumstances.

In this case the one dollar per month was deducted from

respondent's wages with his consent, or at least without his objection, and appeared charged on the statement of his account as " hospital," and nothing whatever was said concerning it by either party to the other. What was the contract? Was the respondent to be furnished with hospital accommodations and medical attendance? The respondent says he understood that he was to have the services of a doctor, if needed, and that he relied on the appellant to furnish him medical or surgical attendance in case of sickness or injury. He knew that there was a doctor at appellant's mines and some kind of a hospital, and had no doubt learned that both were for the benefit of those employed there. And from these facts he concludes that the company contracted to furnish him the privileges of a hospital and the services of a physician. And he introduced evidence tending to prove that it was the general understanding among the miners at Carbonado that Dr. Garner was the company's physician. On the other hand appellant produced positive testimony to the effect that, when the respondent was hurt and while he was being treated, it had no physician in its employment and maintained no hospital, and that the doctor was actually employed by the hospital committee, which was appointed by the employes themselves, and that the hospital was under the control of the same committee.

But, suppose the contention of the respondent to be true that the appellant so conducted itself that it caused the respondent to believe that it was furnishing to him surgical treatment, and that it is estopped from denying that such was the fact, does it follow under the facts of this case that it is liable for the malpractice of the physician? We think it does not. This hospital was maintained and the physician provided for the sole purpose of relieving sick and injured employes without expense to them and without any intention on the part of the company of making any profit out of the undertaking. It was therefore a charitable institution and it was supported by the contributions of employes, and carried on in their interests. And if the com-

pany did employ the physician, as claimed by respondent, to look after and treat the sick and injured, it is not liable for his negligence, but is responsible only for want of ordinary care in selecting him. *McDonald v. Hospital*, 120 Mass. 432 (21 Am. Rep. 529); *Van Tassell v. Hospital*, 15 N. Y. Supp. 620; *Fire Ins. Patrol v. Boyd*, 120 Pa. St. 624 (15. Atl. 553); *Laubheim v. Steamship Co.*, 107 N. Y. 228 (13. N. E. 781, 1 Am. St. Rep. 815); *U. P. Ry. Co. v. Artist*, 60 Fed. 365. And it is not shown that the company was. derelict in that particular. In fact it is not even alleged in the complaint that it did not exercise ordinary and reasonable care to select an ordinarily skillful physician. The action was not brought upon that theory, and the proof fails to support a finding of negligence on the part of the company, and the judgment must, therefore, be reversed.

Reversed and remanded.

STILES and HOYT, JJ., concur.

