[No. 4095.   Decided December 6, 1902.]

FRED SAWDEY, *Appellant,* v. SPOKANE FALLS and NORTHERN RAILWAY COMPANY, *Respondent.*

RAILROADS — COLLECTION OF HOSPITAL DUES — TREATMENT OF EMPLOYEE—MALPRACTICE—GRATUITOUS TREATMENT—QUESTION FOR JURY.

Where a railroad company made a practice of deducting a certain portion of the monthly wages of its employees for hospital dues and of taking care of sick or injured employees, irrespective of whether the illness was incurred in the regular course of employment, a question for the jury was presented as to whether treatment was gratuitous or by reason of contract relations, in the case of an employee who had been injured off the premises of the company after his day's work was done, and had been treated by the company surgeon at its hospital.

SAME — ESTOPPEL.

A railroad company sued for malpractice of its surgeon in treating one of its employees is estopped to say that the service was gratuitous, because he was not injured during work hours, when it had taken plaintiff to its hospital and entered upon his treatment without informing him that it was extending a charity, instead of making a return for the hospital dues it had collected from him during the course of his past employment.

INTERROGATORIES — INTRODUCTION IN EVIDENCE — CONCLUSIVENESS OF
    ANSWERS.

A party who has propounded interrogatories to his adversary may put the answers in evidence without being bound by their statements against his interest, but, under Bal. Code, § 6012, he is entitled to contradict such answers by other evidence.

MASTER AND SERVANT — INJURY OF EMPLOYEE — MALPRACTICE OF
    SURGEON — LIABILITY OF MASTER.

If a railroad company contracts for a consideration to treat its employees for any injury they may receive while in its employ, it is liable for the malpractice of the surgeon employed therefor, notwithstanding it exercised due care in the selection of such surgeon (*Richardson v. Carbon Hill Coal Co.*, 10 Wash. 648, distinguished).

SAME — SUFFICIENCY OF EVIDENCE — NONSUIT.

In an action to recover damages for malpractice, the granting of a nonsuit was erroneous, although a physician called by plaintiff had testified that his condition after treatment might have been the natural result from the character of his injury, when it appears that a second operation had been necessary, that the surgeon employed to assist therein pursued different treatment from that adopted by the surgeon in charge, and that another surgeon had testified that the treatment employed in the first instance was not the usual method in such cases. The necessity for a second operation of itself afforded some evidence that plaintiff had been subjected to unnecessary danger, delay in recovery, pain and suffering, and thus afforded a question for the jury to pass upon.

Appeal from Superior Court, Spokane County.—Hon. LEANDER H. PRATHER, Judge. Reversed.

*Barnes & Latimer,* for appellant.

*Will H. Thompson* and *M. J. Gordon,* for respondent.

The opinion of the court was delivered by

FULLERTON, J.—The appellant brought this action against the respondent to recover damages alleged to have been suffered by him because of the unskillful and negligent manner in which he was treated for a fracture in the lower third of the femur of his left leg by the respondent's surgeon. On the trial, at the close of the appellant's case, the respondent interposed a challenge to the legal sufficiency of the evidence, which challenge the trial court sustained; taking the case from the jury and directing a judgment for the respondent. The challenge was based upon two grounds: (1) That the respondent undertook to treat the appellant gratuitously, and is liable only for the failure to use ordinary care in selecting the surgeon, and that there was no evidence tending to show that it had been negligent in selecting the surgeon; and (2) that there was no evidence that the surgeon selected treated the appellant in a negligent or unskillful manner.

The facts bearing upon the first ground of challenge are substantially these: The respondent is a railway company, and the appellant was one of its employees. The appellant was injured by falling over a low switch stand in the yard of another railway company while on his way from his place of employment to his home after quitting his work for the day. He was immediately taken to the hospital with which the respondent had arranged for the care of its injured employees, and there placed under the treatment of the respondent's surgeon. The appellant had been in the employ of the respondent for some two and one-half years. During that time the respondent had deducted monthly from his wages certain fixed sums, based on the amount paid him, which it had retained and credited on its books to its hospital fund.

There was no special contract entered into between the appellant and the respondent defining the respondent's undertaking in consideration of these deductions, nor was it shown whether or not the appellant had rules applicable thereto. The appellant testified that he made no objection to the company's making such deductions, and that nothing was ever said to him concerning its purpose in so doing, but that it was the custom of all railroad companies of which he had knowledge to make such deductions, and that he understood that he was entitled, in consideration thereof, to hospital accommodations and medical and surgical treatment at the respondent's expense for any sickness he should have or injury he should receive while in the company's employ. It was shown that the company made like deductions from the wages of all its employees, that these deductions exceeded by a considerable sum the amount expended in the care of its sick and injured employees; that, while a separate account of the fund was kept on the books of the company, the fund itself was not kept separate from the company's general fund, but was commingled therewith, and used in the transaction of the general business of the company; and that the amount of the account, as shown on its books, was, to use the language of one of its officers, "voluntarily reduced at one time." It was shown, also, that the respondent had treated others of its employees who had become sick and injured while in its employ, without question as to the cause or source of the sickness or injury; and certain of these testified that their understanding of the respondent's undertaking was as the appellant had testified. The respondent, however, in answer to certain interrogatories propounded to it by the appellant at the commencement of his action, stated that it undertook to treat only such of its employees as should be injured in the

course of their employment, and that, while it had treated certain of them for injuries not so received, it had done so voluntarily,—not because it was obligated to do so.

The respondent's contention that it undertook gratuitously to treat the appellant is rested first upon the fact that the appellant was injured after he had ceased work for the day, and the claim that there was no evidence that it contracted, for a consideration, to treat him for an injury so received. But it seems to us that unless its answer, to the effect that it undertook to treat only such of its employees as should be injured in the course of their employment, is to be taken as conclusive, there was here some evidence from which the jury might have found that its liability was not thus limited. The respondent may, it is true, fix the terms upon which it will receive any one into its service. This it may do by special contract, or by general rules called to the attention of those seeking employment in its service; but, in the absence of such special contract or general rules, the contract is such as the law implies from the acts of the parties and the surrounding circumstances, and cannot be governed by any secret or undisclosed limitations either of the parties may have in mind. Here the acts of the parties, the surrounding circumstances, and the conduct of the appellant with relation to the fund collected, are as much consistent with the idea of contract to treat the employees for injuries received in whatsoever manner, as it is of one to treat only for injuries received in a particular way; and the question was therefore one for the jury, and not the court. But there is another ground for requiring the question to be submitted to the jury. There was evidence tending to show that the respondent had never made it known that it claimed that its contract was only to treat its employees for injuries received by them in the course

23-30 WASH.

of their employment. It had always, so far as shown,
acted to the contrary. It took the appellant to its hospital
and entered upon his treatment, without informing him
that its contract was limited, or that it claimed to be
treating him gratuitously. Clearly, on the principle of
estoppel, it ought not to be heard now to say, in order to
escape liability for malpractice, that it was only extend-
ing to him a charity.

Nor was the answer to the interrogatory conclusive of
the question of the respondent's liability, although intro-
duced in evidence by the appellant. Answers to interrogato-
ries are in the nature of admissions. While the party call-
ing for them may put them in evidence for the admissions
they contain, he is no more bound by their statements
against his interest than he is bound by the statements
of a witness he may call, and who may testify in part
against his interest. He can still introduce evidence con-
tradictory of such statements, and leave it to the jury to
determine wherein the truth lies. Moreover, the right to
contradict answers to interrogatories, though introduced
by the party calling for them, is expressly granted by
statute. Ballinger's Code, § 6012; *Denny v. Sayward,* 10
Wash. 422 (39 Pac. 119).

The second ground is that the evidence is insufficient to
make a case for the jury, under the rule of *Richardson v.
Carbon Hill Coal Co.,* 10 Wash. 648 (39 Pac. 95). This
claim is founded upon the concluding part of the opinion
in that case, where this language is used:

"But, suppose the contention of the respondent to be
true that the appellant so conducted itself that it caused
the respondent to believe that it was furnishing to him
surgical treatment, and that it is estopped from denying
that such was the fact, does it follow under the facts of
this case that it is liable for the malpractice of the physi-

cian? We think it does not. This hospital was maintained and the physician provided for the sole purpose of relieving sick and injured employees without expense to them and without any intention on the part of the company of making any profit out of the undertaking. It was therefore a charitable institution and it was supported by the contributions of employees, and carried on in their interests. And if the company did employ the physician, as claimed by respondent, to look after and treat the sick and injured, it is not liable for his negligence, but is responsible only for want of ordinary care in selecting him."

But it must not be overlooked that this expression had reference solely to the facts shown in the record then before the court. In a previous part of the opinion the court stated that there was positive testimony to the effect that the coal company had no physician in its employ and maintained no hospital; that the doctor whose malpractice was complained of was actually employed by a committee of the employees who contributed the funds; that the hospital where the injured employee was treated was under the control of the same committee; that the respondent in that case knew that there was a doctor at the company's mines and some kind of a hospital, and concluded from those facts that the company had contracted to furnish him the privileges of a hospital and the service of a physician. In such a case it was, perhaps, proper to say that, conceding the company was estopped to deny that it employed the physician, it could be held only for want of care in selecting him, for the hospital seems not to have been under the company's control, and the court expressly states that there was no intent on the part of the company to make a profit out of the undertaking. In reality, therefore, the company was merely a trustee of the fund. In the case before us it is conceded that there was some form of contract, the evidence being in dispute only as to its extent.

Furthermore, the employees here have nothing to do with the hiring of the surgeon or with the maintenance of the hospital; nor is the respondent, in any sense, a trustee of the fund it collects.    All of the surplus over and above the cost of treating its employees inures to its benefit, and it recognizes no responsibility to account for it to any one. There is therefore in this case both the element of contract and profit, and if there were no other differences, this alone would distinguish the cases.    But the case in question was before this court three times, and from the several opinions filed it can be gathered that the court did not intend to lay down the broad rule the respondent contends for.    In the first opinion (6 Wash. 52, 32 Pac. 1012, 20 L. R. A. 338), this language was used:

"If, on the other hand, the company was conducting a hospital with its own physician for the purpose of deriving profit therefrom, or if it contracted with the appellant to furnish him with the services of a competent physician, and to properly treat him in case of an injury, it would be liable for the negligence or want of skill of its physician in attending him."

On the second appeal the opinion in consideration was delivered. On the third appeal (18 Wash. 368, 51 Pac. 402, 1046), it was said that the case was really reversed on the second appeal because testimony irrelevant to the issues had been admitted on the trial.    The only inference that can be drawn from this is that the court concluded on the second hearing that there was not sufficient evidence to justify a finding on the part of the jury that the company was conducting a hospital for the purpose of deriving a profit therefrom, or that it had contracted to treat the injured employee for his injury.    It is not authority for the broad proposition that an employer, where he maintains a hospital for profit, or contracts, for a consideration, to treat his

sick and injured employees, is not liable for the malpractice of the physician or surgeon he employs, notwithstanding he exercised due care in the selection of such physician or surgeon.   On the contrary, the case, as a whole, is authority for the opposite contention; and if in this case the respondent did contract, for a consideration, to treat its employees for any injury they might receive while in its employ, it is liable for the malpractice of the surgeon employed to treat the appellant; and this question, as we say, should have been submitted to the jury.

Was there any evidence of malpractice on the part of the surgeon?   The appellant, after being taken to the hospital, was taken in charge by the respondent's surgeon. The surgeon reduced the fracture, and bandaged to the leg, to hold the fractured bones in place, a long splint, reaching from under the arm to the foot; placing the leg, after being so treated, between small sand bags; using no extension or counter extension appliances.   It was testified by one of the witnesses that the surgeon stated at the time that this treatment was only temporary, and that he would permanently fix it in the morning, but that in the morning, after an examination, he concluded that it was well enough as it was, and left it in that condition for some three weeks.   It further appeared that at the end of that time the surgeon removed the splint, but immediately replaced it, leaving it on the leg for some two weeks more; that he then removed the splint permanently, telling the patient to use the leg as much as possible; that the patient did attempt to comply with the doctor's directions, but found he could not bear any weight upon the leg, could not bear to have it hang down, or even touch it upon the floor; that the doctor thereupon put it in a plaster of paris cast, whereupon the patient was taken to his home, where he remained in bed some ten days more, when the cast was removed.

The leg at that time proved to be very crooked,—"bowed like a barrel stave," as a witness expressed it,—the foot of the injured leg reaching only to the ankle of the other.    A consultation with other physicians was then held, when it was decided that a further operation was necessary.    The appellant was then taken back to the hospital, the leg straightened and dressed with suitable splints, and an extension appliance applied thereto.    The patient then remained in the hospital for six weeks more, when the splints were removed and the leg placed in a plaster of paris cast, which was left thereon some ten weeks.    When this was removed the leg was found to be somewhat shrunken in size, something like an inch shorter than the other, and the knee joint affected; not locking or catching as it should, so that when walking it falls back out of a proper line some three or four inches.    It was testified by the two expert witnesses called by the appellant that a fracture such as the appellant had, being an oblique fracture in the lower third of the femur, was a difficult one to treat, owing to the difficulty of maintaining the fragments in their proper position.    That there were several methods used in practice, and sanctioned by authority, for treatment of such fractures, and that from any of them bad results were not uncommon.    It was testified, also, that a shortening of the leg was to be expected, that a shrinking of the limb was almost a necessary consequence, and that the affection of the knee joint was not an evidence of bad surgery.    They also said, in effect, that the final result in the appellant's case was not worse than might have been expected from the nature of the injury.    One of the witnesses, on cross-examination, said that the treatment of the injury applied by the first surgeon was sanctioned by some authority, and that he thought he had seen very good results obtained by such treatment; the other, that it was not

the usual method of treating oblique fractures of the femur in an adult person; that in such cases it is difficult to hold the fracture in place or prevent curvature, and that extension and counter-extension appliances are usually employed for these reasons; that there were no splints known that would overcome the ordinary contraction of the muscles in an adult muscular person; and that, the more muscular a patient is, the more difficult it is to overcome or prevent such contraction. It was also shown that the respondent at the time of the injury was about thirty years of age, was unusually muscular, and that he had theretofore always enjoyed good health.

It was on this branch of the case that the trial judge sustained the challenge of the respondent to the sufficiency of the evidence. From his remarks when passing upon the motion, it would seem that he reached this conclusion from the fact that the appellant's expert witnesses testified that bad results were liable to follow from this character of injury, no matter how skillfully the injury may be treated, and that the results finally obtained were not worse than might have been expected. But it seems to us that this is not conclusive of the respondent's liability. To secure the result finally obtained, the appellant was obliged to submit to a second operation, with its accompanying dangers, delay in recovery, and consequent pain and suffering. This was claimed as an element of damage in the complaint; and, if it was made necessary by the maltreatment of the surgeon first in charge, it can be recovered for, no matter how successful the final operation was. The contract implied by law from the mere employment of a surgeon is that he will treat the injury he is employed to treat with ordinary diligence and skill. This requires that he bring to its treatment such a degree of skill and diligence as surgeons practicing in the same general

neighborhood, in the same line of practice, ordinarily have and exercise in like cases. He must not experiment in his treatment of the injury. On the contrary, if he desires to avoid liability for his mistakes, he must treat it in some method recognized and approved by his profession as most likely to produce favorable results. If there be more than one of these applicable to the particular case in hand, he is not, of course, liable for an honest mistake of judgment in his selection of the method; but if bad results follow, and liability therefor is to be avoided, it must appear that the treatment applied was approved and recognized, as well as that is was pursued with ordinary diligence and skill. Here the evidence does not fully meet these requirements. While one of the surgeons does say that the treatment first applied was approved by some authority, and that he had seen good results follow from it, he does not say that it was the usual method of treating such fractures, or that he approved of the practice in any case. Much less does he say that it was proper treatment for the case in hand. He was one of the consulting surgeons who advised the second operation, and the one who seems to have had it in charge. It is worth noticing, at least, that he did not, in his treatment of the injury, pursue the treatment adopted by the first surgeon; and it will be remembered that the other surgeon testified unqualifiedly that it was not the usual method of treatment, and that the surgeon in charge seems to have been of the opinion, on first thought, that the treatment was not sufficient for the particular injury. The fact, also, that a second operation was necessary to obtain the results finally obtained is some evidence that the original attempt was not performed with that degree of skill which a surgeon ordinarily brings to the treatment of such an injury. On the whole, therefore, we think there was some substan-

tial evidence to the effect that the appellant had been subjected to unnecessary danger, delay in recovery, and pain and suffering, and that for these injuries he was entitled to recover.

In view of the line of argument pursued in the appellant's brief, and the fact that the cause must be remanded for a new trial, it is well to say that the respondent did not, by its contract, undertake to effect a cure of the appellant's injury, or restore his broken limb to its normal condition. It was in nowise responsible for the original injury, and it undertook only to bring to its treatment that ordinary diligence and skill which surgeons usually exercise in similar cases; and, if it did this, it is not responsible for the results. But, if it did not so treat it, it is responsible only for the injury its failure to do so entailed, not for the injury as a whole. Its liability is measured by its own dereliction of duty, not for everything the appellant may have lost or suffered because of the accident. It is well to say, also, that what we have said concerning the evidence is not to be taken as conclusive of the question discussed. What we mean is that the evidence presents questions upon which the appellant was entitled to the judgment of the jury whether or not he had suffered a damage at the hands of the respondent, not that his right of recovery is conclusively established.

The judgment is reversed and the cause remanded for a new trial.

REAVIS, C. J., and DUNBAR, MOUNT and ANDERS, JJ., concur.