[No. 10630.    Department Two.    December 21, 1912.]

PARIS A. WILLIAMS, *Respondent*, v. H. A. WURDEMANN *et al.*,
*Appellants.*[1]

PHYSICIANS AND SURGEONS—MALPRACTICE—NEGLIGENCE—EVIDENCE
—QUESTION FOR JURY.  Whether surgeons were negligent in failing
to remove all of the packing and to stop a hemorrhage, following
a surgical operation on plaintiff's nose, is for the jury, where there
was evidence tending to show that they failed to do so, and that
a speedy recovery followed on its removal by another surgeon.

SAME—DEFENSES—CONTRIBUTORY NEGLIGENCE.    Where a patient
has been improperly treated, he may quit the treatment at any
time, and it is no defense to an action for malpractice that the
patient did not return for further treatment, when he found he
was not getting along as he should, notwithstanding it was highly
probable that had he done so, the treatment would have been
changed and a cure effected.

TRIAL—INSTRUCTIONS—EVIDENCE—PLEADINGS AND ISSUES.. In an
action for malpractice, instructions on the theory that the defend-
ants treated the plaintiff as specialists, are proper where the un-
disputed evidence showed that to be the case, notwithstanding the
complaint alleged the cause of action against them as general prac-
titioners.

APPEAL—REVIEW—HARMLESS ERROR—INSTRUCTIONS.   In an action
for malpractice, an instruction on the subject of the degree of care
required, referring to it as such care and skill as the plaintiff
"should expect," or as the public had a "right to expect" is not
prejudicial error, where in the same instruction defendants' under-
taking was specifically stated to be to use "reasonable care and
skill," and also later instructions stated the rule in the language
requested by the appellants.

Appeal from a judgment of the superior court for King
county, Everett Smith, J., entered August 15, 1912, upon
the verdict of a jury rendered in favor of the plaintiff, in an
action for malpractice.   Affirmed.

*John W. Roberts*, for appellants.

*Beeler & Sullivan*, for respondent.

[1]Reported in 128 Pac. 639.

FULLERTON, J.—This is an appeal from a judgment rendered against the appellants for malpractice. The errors assigned and argued in the briefs are that the trial court erroneously refused to sustain the appellants' challenge to the sufficiency of the evidence, and gave erroneous instructions to the jury.

The evidence was conflicting on practically all of the material issues. This court is therefore obligated to assume as true that version of it which tends to support the jury's verdict. The appellants were physicians and surgeons specializing in the treatment of diseases of the eye, ear, nose and throat. The respondent suffered from a ringing sensation and partial deafness in his left ear, and employed the appellants to treat him for his malady. He consulted particularly with the appellant MacWhinnie, and in the course of the treatment the doctor performed a surgical operation on his nose, removing a bony or cartilaginous growth therefrom, called in the record a spur. The wound made by the operation bled somewhat profusely; so much so, indeed, that it was found necessary in order to stop it to remove the respondent to a hospital and pack that part of his nose surrounding the wound with absorbent cotton. The doctor first undertook to pack the nose with cotton tampons pushed in with instruments; but finding that he could not stop the hemorrhage in this way, ran a string through the nasal channel into the mouth, and by fastening cotton tampons to the string succeeded in drawing them into the nose tight enough to accomplish his purpose. After lapse of several hours, the string on which were fastened the tampons was removed. The respondent was then given a lotion for local application, and told to return for further treatment. No time seems to have been fixed for respondent to return, and he did not call until some six days later, when he found that Doctor MacWhinnie had left the office for a visit to the eastern states to be gone for an indefinite time. The respondent was waited upon by Dr. Wurdemann, to whom he described his condition, and was

advised to go home and remain quiet for a time. The respondent however did not improve as was expected. On the contrary, his nose soon began to discharge fetid matter, and some days later he consulted with another physician, who, on examining the nose, found a cotton tampon on one side and an adhesion on the other. The doctor treated the patient by removing the tampon, dividing the adhesion, and washing out the nose. Recovery speedily followed.

It is respondent's claim that the tampon found in his nose by the last mentioned doctor was a part of the packing put in originally by Dr. MacWhinnie to stop the bleeding following the surgical operation, and was, by an oversight on his part, not removed at the time of the removal of the tampons attached to the string; that this was not discovered by Dr. Wurdemann, whom he consulted some days after the operation, and was the cause of the disorders following that operation. The plaintiff's evidence, we think, tends reasonably to support this conclusion, and this being so, we think it was for the jury, and not the court, to say whether the doctors were guilty of such negligence as constituted malpractice.

It is further argued, however, in this connection, that the respondent was obligated to return to the appellants for further treatment when he discovered that he was not getting along as well as he should, and that his failure so to do was such negligence on his part as will prohibit a recovery against the appellants. But such is not the rule. It is true, undoubtedly, that if a patient employs a physician to treat him for a malady and receives careful and skillful treatment at his office, but fails to return to the office for further treatment before he is discharged by the physician, and in consequence suffers an injury, he is not entitled to recover against the physician for such injury; and it is also true that a physician's liability ceases the moment his patient dismisses or discharges him, if his treatment of the case has been proper up to that time. But these principles have no application where the physician's treatment of the case has been

improper. When being improperly treated, the patient is at liberty to quit at any time, and he may hold the physician liable for the injuries suffered by him because of the improper treatment, notwithstanding it is highly probable that the physician, had the patient continued his treatment, would sooner or later have discovered that his treatment was improper and would so have modified it as to effect a cure. *Dashiell v. Griffith*, 84 Md. 363, 35 Atl. 1094; *Kendall v. Brown*, 74 Ill. 232; *DuBois v. Decker*, 130 N. Y. 325, 29 N. E. 313, 27 Am. St. 529, 14 L. R. A. 429; *Sauers v. Smits*, 49 Wash. 557, 95 Pac. 1097, 17 L. R. A. (N. S.) 1242. We conclude, therefore, that the court did not err in refusing to sustain the challenge to the sufficiency of the evidence.

The court on its own motion gave to the jury the following instructions:

"(2)   You are instructed that, where a physician undertakes the treatment of a patient and subsequently performs an operation, not only must he use reasonable and ordinary care and skill in its performance but also in the subsequent treatment of the case. It is his duty to give the patient such attention after the operation as the necessity of the case demands, taking into consideration the duty he owes to the patient as regards such care, and if you find from the evidence that the defendants or either of them performed an operation upon the plaintiff and did not thereafter use such reasonable care and skill in subsequent treatment as the plaintiff should expect from the defendants or each of them, or such care as is imposed upon physicians holding themselves out as specialists in ailments such as contracted for by the plaintiff, and if you further find from the evidence that because of such failure to use reasonable care and skill in the subsequent treatment of the plaintiff, that the plaintiff was permanently injured or suffered pain, injury and damage, then you will find for the plaintiff in such sum as you deem just and proper, following the instructions of the court in this regard.

"(3)   The terms 'careless' and 'negligent,' as used in these instructions, do not imply lack of skill or capacity but simply a disregard of ordinary prudence and care which one

has a right to expect from persons holding themselves forth as physicians specially fitted to cure certain ailments, and although you may believe the defendants to have possessed all the qualifications necessary to competent and skilful physicians and surgeons as specialists, yet if it has been proven that they, or either of them, were careless and negligent in treating the plaintiff and that through such carelessness and negligence plaintiff has been permanently injured or that pain, suffering or injury has been brought about due through such carelessness and negligence, then the mere fact that the defendants or either of them may have been competent and skilful constitutes no defense to this action."

At the request of the appellants, it gave the following:

"(6)   A physician and surgeon, by taking charge of a case, impliedly represents that he possesses, and the law imposes upon him the duty of possessing reasonable skill and learning. He is not liable for mistakes, if he uses the method recognized and approved by those reasonably skilled in the profession. He does not undertake to insure or guarantee success. If he treats the injury with a reasonable degree of skill and care, he is not responsible for the results.

"(7)   The mere fact that no cure was effected or that the treatment or operation was not successful does not create a liability or raise a presumption of want of proper care or skill. The law accords the medical practitioner the presumption that he has done his duty and the burden is on the plaintiff to prove want of reasonable care or skill and that the same was the proximate cause of the injury. That is to say, that the injury complained of resulted from said want of care or skill. In order for the plaintiff to recover in this action, it is necessary for him to prove by the greater weight of the evidence something more than a bad result. That is to say, he must establish by the greater weight of evidence that the injury is the result of a want of proper care and skill on the part of the defendants.

"(8)   A physician is not to be judged in the light of any after acquired knowledge in relation to the case, and his neglect or want of care are to be determined by reference to what was known in relation to the case at the time, and must be determined by reference to pertinent facts then in existence of which he knew, or should have known in the exercise

of due care, and if the defendants in this case, or either of
them, in the light of known or knowable facts in existence at
the time the plaintiff was being treated by the defendants or
either of them, applies skill and judgment with due care,
they are not liable for any damages or injuries consequent
upon an honest mistake or an error in judgment in making a
diagnosis, and if what the defendants, or either of them, did
was done in accordance with recognized authority and good
current practice, then they performed the full measure of
their duty.''

It is objected to the instructions given by the court on its
own motion that it is assumed therein that the appellants
were treating the respondent as specialists; whereas, this
action was brought against them as general practitioners,
and there was no issue as to the character in which they were
sued.   But while it is true that the respondent did not al-
lege in his complaint that the appellants undertook as spe-
cialists to treat him for the particular malady with which
he was suffering, yet he was permitted to testify without ob-
jection to facts tending to show that the appellants held
themselves out as specialists in the treatment of the disease
with which he was afflicted; and the appellants themselves
testified, in answer to questions put to them by their own coun-
sel, that they were practicing as specialists in the treatment
of diseases of the eye, ear, nose and throat.   Under our prac-
tice, it is not error for the court to instruct the jury accord-
ing to the case made by the undisputed evidence, notwith-
standing such evidence may go beyond the issues made by the
pleadings.   There was therefore no error in assuming that
the appellants undertook to treat the respondent as special-
ists.

The second objection is that the court, in the instructions
given upon his own motion, gave to the jury a wrong rule
for measuring the degree of care and skill which the law
exacts of physicians and surgeons in the treatment of dis-
eases.   It is said that the court, in its first instruction
quoted, stated this rule to be such degree of care and skill as

the respondent "should expect" of the appellants; and in the second, such as "one," that is the public generally, "had a right to expect" of them. But manifestly this was not the court's meaning, for in the same instruction he states specifically that their undertaking was to use "reasonable care and skill," and later on gave all of the instructions asked for by the appellants which bore on the question of the degree of care and skill the appellants were legally bound to exercise in the care of the respondent. It is true, none of those instructions state the rule as this court has heretofore announced it, or perhaps as the authorities generally announce it; but since the court stated the rule in the very words submitted by the appellants themselves, it is difficult to see how they are in a position to complain.

We find no substantial error in the record, and the judgment will stand affirmed.

MOUNT, C. J., MORRIS, ELLIS, and CHADWICK, JJ., concur.