[No. 11012. Department One. September 20, 1913.]

LOGAN WHARTON *et al.*, *Appellants*, v. WILLIS H. WARNER *et al.*, *Respondents*.[1]

MALPRACTICE—NEGLIGENCE—EVIDENCE—QUESTION FOR JURY. In an action for malpractice, the negligence of a surgeon is a question for the jury, where it appears that, in performing the operation of curettement of the uterus, he allowed a metallic spring, twelve inches long, to be detached from an instrument and left in the body of the patient, and there was evidence tending to establish that he might have discovered and removed the spring, and that such an instrument was not commonly used by surgeons of average skill in that locality; and in such a case, negligence may be inferred without the aid of expert testimony.

ASSOCIATIONS—ACTIONS—JUDGMENT. In an action for malpractice, judgment cannot be rendered against an unincorporated sanitarium which was but the name of a hospital conducted by one of the defendants.

CHARITIES—CHARITABLE HOSPITAL—LIABILITY—MALPRACTICE— EMPLOYMENT OF PHYSICIAN. A charitable hospital incorporated to found a medical and charitable sanitarium to care for indigent and other sick persons, is not liable for the negligence of its physician, where it exercised reasonable care in selecting him.

Appeal from a judgment of the superior court for Walla Walla county, Brents, J., entered July 17, 1912, in favor of the defendants, notwithstanding the verdict of a jury rendered in favor of the plaintiffs, in an action for malpractice. Reversed in part and affirmed in part.

[1]Reported in 135 Pac. 235.

*Pedigo & Smith,* for appellants.

*Dunphy, Evans & Garrecht,* for respondent Warner.

*John C. Hurspool,* for respondents Upper Columbia Mission Society etc. *et al.*

Gose, J.—This is a suit to recover damages resulting to the plaintiff wife from the alleged malpractice of the defendant Willis H. Warner, a physician and surgeon. It is alleged in the complaint that the defendant corporations conducted and maintained a surgical and medical institution, known as the Walla Walla Sanitarium; that they employed the defendant Warner as surgeon in charge thereof, and that the plaintiff wife employed the defendants, for a consideration, to give her medical and surgical treatment known as curettement of the uterus. It is further alleged:

"That said defendants and its agents and employees performed said surgical operation and administered said medical treatment and in the performance thereof, made use of a certain machine known as a uterine packer; that in using said machine, a spring therefrom, some twelve inches in length, became detached from said machine and was negligently, carelessly and unskillfully forced and packed into the uterus of plaintiff, and carelessly, negligently and unskillfully allowed to remain therein for a period of fifteen days following said operation, and by reason thereof, plaintiff has had and still has constant pain at the base of the bladder and constant hemorrhage from uterus, and injury inflicted thereby has caused a tumor mass between uterus and base of bladder, and the lining membrane of uterus has become diseased by reason of this injury inflicted by said spring."

It is also alleged that, in consequence of the alleged negligence, she suffered great pain, that her illness was aggravated and prolonged, and that her health has been permanently impaired.

The case was tried to a jury, eventuating in a verdict in favor of plaintiffs, upon which a judgment was entered. A day or two later, the defendants other than the Walla Walla Sanitarium severally moved for a vacation of the verdict and

judgment, and for a judgment *non obstante*, and in the alternative for a new trial. The several motions for the vacation of the verdict and judgment and for a judgment in favor of the several defendants were sustained, and the several motions for a new trial were overruled, and a judgment was entered in favor of the several defendants for costs. The plaintiffs have appealed. For convenience of reference, the plaintiff wife will hereafter be called the appellant. The appeal involves the sufficiency of the evidence to support the verdict.

The case made against Dr. Warner will be first considered. It will be observed that there are two charges of negligence; one, an act of commission; the other, of omission. The negligence alleged to have been committed is that Dr. Warner, in performing an operation known as curettement of the uterus, used a uterine packer; that a spring therefrom, about twelve inches in length, became detached and was forced and packed into the uterus of appellant. The charge of omission is that the spring was suffered to remain in the uterus for fifteen days after the operation had been performed. A uterine packer is a small round tubular instrument about eighteen inches in length. In the process of the operation, gauze was inserted into the uterus by means of a small piston which operates through the tube. The spring was attached to the piston near its base and laid parallel with it. It is admitted that the respondent Warner performed the operation. The appellant testified that Dr. Thomas removed the spring fifteen days after the operation; that she complained of pain to the nurses from the beginning; that the pain was continuous for three months; that "the last week of the fifteen days was the worst—before he found the spring," and that "it was continuous pain." Dr. Thomas took charge of the case three or four days after the operation had been performed. The packing of gauze had then been removed. His testimony is that he found the spring "perhaps six, eight or ten days" after he was called to attend the appellant; that he found one end of the spring "in the neck of the uterus,

the other end was through the posterior vaginal wall into the bowel or into the rectum;" that he could not understand "how the gauze could be removed and leave the spring in. A thorough examination would find the spring." Dr. Keylor testified that he never saw a uterine packer with a similar spring and when asked whether such a packer was then used, answered that "he did not know." Dr. Shaw was asked: "Q. Those kind of packers were and are considered to be standard instruments?" He answered, "I doubt if they are made now. I doubt it but I am not sure. I know the ones I have bought within a few years past were not in it." Respondent Warner testified that the operation was curettement of the uterus; that he packed the gauze in the uterus to control the hemorrhage; "that the spring there was inside of here [evidently meaning the tube] absolutely without my knowledge because they are not usually made that way;" that after removing the packing, he examined the uterus with a vaginal speculum, and,

"That there was nothing to prevent me seeing into the mouth of the uterus and I thought there was nothing in the mouth of the uterus because I examined in there carefully and thoroughly which it is necessary to do because I wanted to see that the vagina was absolutely clean and also in case there should be some hemorrhage that I must care for before I left; so I examined the uterus with this vaginal speculum. I myself removed the packing from the uterus."

He further said:

"When I removed that gauze from the mouth of the uterus, I had an absolutely unobstructed view, so if any part of that spring had remained I guess it would have been exposed to view."

Passing to the law of the case, it may be announced as one of the fundamentals of the law that negligence is never presumed, but that it must be affirmatively established by competent evidence. It is equally well settled that, when a physician and surgeon takes charge of a case, he impliedly rep-

resents that he possesses, and the law imposes upon him the duty of possessing and exercising, reasonable skill and learning; that is, such skill and learning as is possessed by the ordinary practitioner in that general locality, measured by the state of medical and surgical science at the time the service is rendered. *Wells v. Ferry-Baker Lumber Co.*, 57 Wash. 658, 107 Pac. 869, 29 L. R. A. (N. S.) 426.

Tested by these principles, there is abundant evidence of Dr. Warner's negligence. Indeed, it would excite surprise had the jury returned a different verdict. The jury was warranted in finding, (a) that he was guilty of negligence in leaving the spring in the uterus; (b) that he was negligent in failing to discover and remove it; and (c) that the packer with which he performed the operation was not then used by surgeons possessing average learning and skill in that locality. *Williams v. Wurdemann*, 71 Wash. 390, 128 Pac. 639; *Harris v. Fall*, 177 Fed. 79.

In the *Williams* case, the surgeon, who was charged with negligence, removed a growth from the respondent's nose and packed the nose with cotton tampons to arrest the flow of blood. A few hours later, a string to which the tampon was attached was removed. Some days later, the respondent consulted another physician who, upon examining the nose, found a cotton tampon on one side and an adhesion on the other. This physician removed the tampon. The respondent claimed that the tampon found in his nose by the last physician was a part of the packing inserted in the nose by the surgeon who performed the operation. It was contended on behalf of the operating physician that the verdict against him was not supported by sufficient evidence. We held, upon the evidence to which we have alluded, that it was for the jury and not the court to say whether the doctor was guilty of such negligence as constituted malpractice. In *Harris v. Fall*, one of the plaintiff's kidneys was removed. At some stage of the treatment, a band of gauze was inserted and left in the kidney cavity, requiring another operation. This was

held sufficient to carry the case to the jury on the charge of malpractice.

It is argued on behalf of the respondent Warner, (1) that whether a surgical operation was unskillfully performed is a question of science, and is to be determined by the opinion evidence of surgeons; and (2) in effect that a bad result standing alone is no evidence of unskillful surgery. From these postulates, it is argued that there is no evidence to sustain the verdict. Both propositions are sound when soundly applied. The reason is that, in most cases, a layman can have no knowledge whether the porper medicine was administered or the proper surgical treatment given. Whether a surgical operation was unskillfully or skillfully performed, is a scientific question. If however, a surgeon should lose the instrument with which he operates in the incision which he makes in his patient, it would seem, as a matter of common sense, that scientific opinion could throw little light on the subject. So in this case, where a surgeon loses a metallic spring, about twelve inches in length and about one sixteenth of an inch in width, in the body of his patient and fails to discover and remove it, it would seem that a jury would have abundant justification for inferring negligence without the aid of expert testimony. But putting this view aside, we think the evidence set forth was sufficient to support the verdict.

There was no evidence which tended to connect the respondent Upper Columbia Mission Society of Seventh Day Adventists of College Place, a corporation, with the transaction, and the judgment was properly entered in its favor. The Walla Walla Sanitarium is unincorporated, and is but the name of a hospital conducted by the Upper Columbia Medical Missionary and Benevolent Society. There could be no judgment against it.

Respondent Upper Columbia Medical Missionary and Benevolent Society is a corporation organized for charitable purposes only. Its articles of incorporation state that the object and purpose is to found a medical and charitable sanitar-

ium, hospital and asylum at the city of Spokane and other points in the state, for the care and relief of indigent or other sick and insane persons; that patients who are able to and do pay may also be received, the funds and property acquired and received from all sources to be devoted exclusively to the maintenance and improvement of the institution, and that it shall not be conducted "directly or indirectly for private profit or dividend paying to anyone." The evidence shows that it exercised reasonable care in selecting Dr. Warner. There is no evidence to the contrary. It cannot, therefore, be held responsible for his negligence. *Wells v. Ferry, supra; Richardson v. Carbon Hill Coal Co.*, 10 Wash. 648, 39 Pac. 95. The same rule applies where the plaintiff has paid for the services rendered, where the amount received was not for private gain, but to more effectively accomplish the purposes for which the charity was founded. *Downes v. Harper Hospital*, 101 Mich. 555, 60 N. W. 42, 45 Am. St. 427, 25 L. R. A. 602; *Hearns v. Waterbury Hospital*, 66 Conn. 98, 33 Atl. 595, 31 L. R. A. 224; *Gable v. Sisters of St. Francis*, 227 Pa. 254, 75 Atl. 1087, 136 Am. St. 879; *Adams v. University Hospital*, 122 Mo. App. 675, 99 S. W. 453; *Abston v. Waldon Academy*, 118 Tenn. 24, 102 S. W. 351, 11 L. R. A. (N. S.) 1179; *Parks v. Northwestern University*, 218 Ill. 381, 75 N. E. 991, 2 L. R. A. (N. S.) 556; *Pepke v. Grace Hospital*, 130 Mich. 493, 90 N. W. 278; *Gitzhoffen v. Sisters of Holy Cross Hospital*, 32 Utah 46, 88 Pac. 691, 8 L. R. A. (N. S.) 1161. Some of the cases cited hold that a corporation conducting a charitable institution is not liable for the negligence of an employee, even where it has failed to exercise reasonable care in selecting him. This is upon the ground that all its property is a trust fund, and that that fund cannot be diverted to extraneous objects. We are not required to go to that extent in his case.

The judgment is reversed as to the respondent Warner, with directions to enter judgment against him for the amount of the verdict. As to the other respondents, it is affirmed.

The appellants will recover costs against the respondent Warner. The other respondents will recover costs against the appellants. The costs will be equitably apportioned in this court and in the court below in harmony with these directions.

CROW, C. J., MOUNT, and CHADWICK, JJ., concur.