[No. 12568. Department One. October 2, 1915.]

PETER DAHL, *Appellant*, v. G. C. WAGNER, *Respondent*.[1]

PHYSICIANS AND SURGEONS—MALPRACTICE—ERROR OF JUDGMENT—NEGLIGENCE—EVIDENCE—SUFFICIENCY. A surgeon is not liable for malpractice where, having successfully treated a "mashed" foot until it was healed, he failed to subsequently make an attempt to reset a bone or perform an operation that might have restored the functions of the foot, according to the opinion of some of the experts, but which, according to others equally skilled, was considered foolhardy and hazardous to life or limb, and at most he was guilty of a mere error of judgment upon a question in doubt.

SAME—CONTRACT TO TREAT PATIENT—FAILURE TO PERFORM—LIABILITY. Where, after treatment of a "mashed" foot, the patient on leaving the hospital suffered pain that could be relieved by cutting off the end of a protruding bone, it is the continuing duty of a physician who was under a contract to treat the patient to perform the operation; and on failure so to do, he is liable for the cost of the operation.

SAME. In such a case, the surgeon would not be liable for the patient's continued pain and suffering after he was advised that it could be relieved by an operation; since it was the patient's duty to minimize the same by having the operation performed.

¹Reported in 151 Pac. 1079.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered April 7, 1914, in favor of the dedendant, notwithstanding the verdict of a jury rendered in favor of the plaintiff, in an action for malpractice. Modified.

*Hugo Metzler* and *A. Emerson Cross*, for appellant.

*Bates, Peer & Peterson* and *Charles Arnold*, for respondent.

CHADWICK, J.—At about six o'clock in the evening of March 8, 1913, plaintiff, a workman in a logging camp, was injured by a log rolling on his foot. The defendant having the contract to treat the men under the hospital fee system, arrived at the scene of the accident about eleven o'clock and brought plaintiff to the hospital, which they reached at about one-thirty in the morning. Plaintiff's hurts consisted of a dislocation of one of the cuneiform bones of the foot and two cuts or wounds in the top of the foot. As described in the complaint and generally supported by the testimony, "a log which he was attempting to load fell, striking him on the left foot, mashing, bruising and maiming" it so that plaintiff was most seriously injured. The condition of the foot is variously described as "mashed to a pulp" or "mashed to a jelly." Infection followed the wound and plaintiff was confined to his bed for from six weeks to two months. Plaintiff remained at the hospital until June 5, when he left with the consent of the defendant. He thereafter called on defendant two or three times seeking relief from the pain which he claims to have suffered. His last call was made on the 28th of June. Defendant advised him to get some light work and he would probably have a good foot.

The dislocated cuneiform bone—it is described by one of the medical witnesses as the keystone of the arch of the foot—was pressed downward and forward, so that when plaintiff walks the weight of his body rests upon the projecting end of the bone, causing great pain and suffering.

It is alleged that defendant was guilty of neglect and malpractice, in that he neglected to reset the bones within the first three weeks by manipulation, or in failing to perform an operation by cutting the foot open, spreading the bones with forceps and pushing the dislocated bone, which is wedge shaped, the top being the base of the wedge, back into place. The case went to trial, resulting in a verdict for the plaintiff. Upon defendant's motion, a judgment was entered *non obstante,* and plaintiff has appealed.

There does not seem to be any real controversy as to the facts. The legal position assumed by respondent is admitted by appellant. The ultimate question is, was it the duty of the respondent to attempt to set the dislocated bone by manipulation, or, the time passing when this might have been done—it being admitted that nature would grow new tissue as well as adapt the old tissue to the new situation—should respondent have performed an operation. We have read the record with care and, so far as the main issue is concerned, we can make no more out of it than that respondent is charged with an error of judgment.

Appellant put a medical witness upon the stand who expressed the opinion that if there was swelling and infection so as to prevent a resetting or an operation during the acute stage, an effort should have been thereafter made to restore the functions of the foot. The essence of his opinion is that the sooner the dislocation is reduced by one method or another the better. On the other hand, several medical men and surgeons of equal skill and judgment, so far as the record shows, are most positive in the opinion that the respondent was in no sense delinquent; that it would have been foolhardy, if not impossible, to reset the bone by any process until the wounds had entirely healed and all danger of latent infection had passed; that the bruising or cutting of the new tissue necessarily incident to a resetting or an operation would have been hazardous; that the bone would not have remained in place if set (not

admitting that it could have been so set), and that an operation might have made the infective germs, which may lie dormant after such an injury, active, resulting in the possible loss of the foot or the life of appellant; that the duty of a surgeon under the conditions disclosed is to first look to the life of the patient. The treatment is described by one of the surgeons as "a monument of good surgery." It will be seen, then, that the real question between the expert witnesses is, when an operation might or should have been performed.

It has been the uniform holding of this court that where doctors of equal skill and learning, being in no way impeached or discredited, disagree in opinion upon a given state of facts, that the courts cannot hold a defendant in a malpractice suit to the theory of the one to the exclusion of the other. This is the logic of *Brydges v. Cunningham*, 69 Wash. 8, 124 Pac. 131. It is enough if the treatment employed "have the approval of at least a respectable minority of the medical profession who recognized it as a proper method of treatment." *Lorenz v. Booth*, 84 Wash. 550, 147 Pac. 31. The reason is obvious. A man who is called upon to exercise professional judgment is bound only to the exercise of reasonable skill and learning and diligence. "He is not liable for mistakes if he uses the method recognized and approved by those reasonably skilled in the profession." *Wells v. Ferry Baker Lumber Co.*, 57 Wash. 658, 107 Pac. 869, 29 L. R. A. (N. S.) 426; *Sawdey v. Spokane Falls & N. R. Co.*, 30 Wash. 349, 70 Pac. 972, 94 Am. St. 880; *Wharton v. Warner*, 75 Wash. 470, 135 Pac. 235; Shearman & Redfield, Negligence, §§ 433-435; Witthaus & Becker, Medical Jurisprudence, p. 30.

This court will not assume to pass upon the facts or find the preponderance of the evidence upon any question of fact; nor can it be said that we are doing so in this case for the facts are not reasonably disputable. But we may assume to say, if men of skill and learning express contrary opinions

upon admitted facts and such opinions differ, although not preponderating the one way or the other (as they do in this case), that the law will not impose a liability upon a professional man who acts within the reasonable limit of either opinion.

Nor will a court hold a man guilty of malpractice when doctors disagree as to methods of treatment, although it be suggested that there is a more modern method than the one employed, or the surgeon employs a modern method to the exclusion of one theretofore adopted as a standard. *Lorenz v. Booth, supra.*

The court did not err in its judgment in so far as it held that respondent is not liable as for malpractice up to the time appellant left the hospital, but the record raises another issue that we have not decided without some difficulty.

The whole record sustains the conclusion, and it is reasonably within the bounds of all of the opinion evidence, that an operation, at least to the extent of shaving or cutting off the end of the protruding bone, would relieve appellant of the pain incident to the present use of the member. It is the duty of a surgeon to do all that is reasonably necessary and reasonably within the limits of professional skill to relieve pain and suffering. *Hood v. Gerrick,* 69 Wash. 607, 125 Pac. 956.

Granting that respondent had violated no duty up to the time appellant left the hospital, it does not follow, under the testimony of his own witnesses, that he was released from his duty to operate at such time as the foot was in proper condition. He was under contract to treat appellant. His duty was a continuing duty, continuing to the limit of reasonable professional ability. *Hood v. Gerrick, supra.* It being reasonably clear that an operation is necessary and will probably relieve the physical suffering so far endured by appellant—as to this there is no substantial difference of opinion—and the parties having offered evidence to show the reasonable cost of such operation, the judgment of the

court is reversed, with directions to enter a judgment in favor of appellant for two hundred dollars.

The question may occur why we have not held respondent to a liability for the continued pain and suffering pending an operation. The answer is: The defendant is not responsible for the original injury—he is answerable for proper care and treatment only. *Cranford v. O'Shea*, 83 Wash. 508, 145 Pac. 579. Under appellant's own theory of the case that an operation should have been performed while he was still in the hospital, or within a reasonable time thereafter, he cannot recover. At the time he consulted another surgeon, which was only a short time after he called on respondent for the last time, he was advised that an operation would relieve him of his pain. He was under a legal duty to minimize his damages. *Mickelson v. Fischer*, 81 Wash. 423, 142 Pac. 1160. It follows that he cannot recover for the continued pain and suffering; or, to state the proposition in another way, it was appellant's duty, if he conceived that he had been maltreated, to have an operation performed and bring suit for the reasonable cost thereof. *Williams v. Wurdemann*, 71 Wash. 390, 128 Pac. 639.

In some of its features, this case seems to be one of first impression. We have considered it carefully and think we understand it. At any rate, we are satisfied with the result now announced.

Reversed with directions.

MORRIS, C. J., HOLCOMB, PARKER, and MOUNT, JJ., concur.