[No. 12587. Department One. September 24, 1915.]

MAMIE JUST *et al.*, *Respondents*, v. CHARLES W. LITTLEFIELD, *Appellant*.[1]

PLEADINGS—COMPLAINT—MAKING MORE DEFINITE—PHYSICIANS—MALPRACTICE. In an action for malpractice, an allegation in the complaint that the defendant had failed to make the "usual test" in determining upon his diagnosis, should on motion be made more specific and certain as to the test referred to.

APPEAL—REVIEW—HARMLESS ERROR. Technical error in denying a motion to make a complaint more definite and certain is unavailable, in the absence of a showing of surprise or prejudice, under Rem. & Bal. Code, § 1752, requiring the court to disregard technicalities and hear a case on its merits where the party has not been misled to his prejudice.

PHYSICIANS AND SURGEONS — MALPRACTICE — LIABILITY — WRONG DIAGNOSIS. A wrong diagnosis, unless followed by improper treatment, does not, as a matter of law, make a physician liable for malpractice, where there is room for an honest difference of opinion.

SAME. Liability for malpractice in making a wrong diagnosis, followed by improper treatment, depends not on lack of ordinary skill, as such, but upon reasonable skill and diligence in the treatment, there being a fundamental difference between mere errors of judgment and negligence in previously collecting data essential to a proper conclusion.

SAME—MALPRACTICE—WRONG DIAGNOSIS—NEGLIGENCE — QUESTION FOR JURY. The negligence of a physician in erroneously diagnosing a case of pregnancy as cystic tumors, and in performing an operation for the latter complaint, is a question of fact for the jury, where it appears that he knew another physician had diagnosed the case as pregnancy, and that, after his own diagnosis, the first physician, with another, again determined the pregnancy of the plaintiff and that she had no tumors, that she was 37 years of age, not past her climacteric period, and living with her husband, that the bimanual test may give more indicative results during the fourth, fifth, and sixth months than earlier; notwithstanding which, and the fact that there may be different and honest differences of opinion, the defendant stated that the "other doctors are crazy" and advised an operation for tumors immediately without waiting and watching developments.

[1]Reported in 151 Pac. 780.

SAME — MALPRACTICE — NEGLIGENCE — DEFENSES.   Consent of the patient to an operation for tumors upon the positive assurance that tumors existed, does not authorize an exploratory operation to determine the true condition.

SAME—MALPRACTICE—DAMAGES.   A verdict for $500 damages for malpractice in performing an operation for tumors when plaintiff was only pregnant, is not excessive where there was evidence that plaintiff suffered pains for five months, and birth was delayed for one month and the child died as a result of the operation and plaintiff's health was permanently injured so that she could not perform her duties.

DAMAGES—PHYSICAL EXAMINATION.   In an action for malpractice, it is not error to refuse to appoint a physician selected by defendant to make a physical examination of the plaintiff, where a disinterested physician was selected and appointed by the court.

DAMAGES—PHYSICAL EXAMINATION—EVIDENCE.   Where, in an action for malpractice, the court appointed a disinterested physician to make a physical examination of the plaintiff, he may be fully examined by the plaintiff upon hypothetical questions as to matters within the issues; as he is as much the witness of one party as of the other.

APPEAL—PRESERVATION OF GROUNDS—EXCEPTIONS.   Error cannot be based upon the giving or refusing to give instructions which are not excepted to within the time required by statute.

Appeal from a judgment of the superior court for King county, Albertson, J., entered April 18, 1914, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for malpractice.   Affirmed.

*Robert A. Devers*, for appellant.
*Jackson Silbaugh*, for respondents.

HOLCOMB, J.—During the latter part of 1912, respondent, Mrs. Just, was suffering some physical ailment, and for a time was treated by a Dr. Dawson.   She did not improve as she desired, and a lady osteopathist, rooming at the apartment house of which respondents had charge, recommended the appellant as a physician, and took Mrs. Just to consult him on about January 25 or 26, 1913.   Appellant examined her and diagnosed her ailment as cystic tumors.   Mrs. Just

testified that she informed appellant that Dr. Dawson had diagnosed her case as pregnancy. Appellant was positive, she says, that the trouble was cystic tumors, and advised her that an immediate operation was necessary. Before deciding to accept and act upon appellant's advice, Mrs. Just consulted with her husband and again consulted with Dr. Dawson, informing him of appellant's diagnosis and advice. Dr. Dawson then, to confirm his diagnosis, called in another physician, a Dr. Bourns, who had previously treated Mrs. Just, who, in company with Dr. Dawson, made an examination of her and determined that her condition was that of pregnancy of the stage of three or four months. Dr. Dawson then took her to a hospital for treatment for membranous colitus. She did not seem to improve, and, after talking the matter over with her husband, they concluded that perhaps Dr. Littlefield was right and they again called him in and discharged Dr. Dawson. Appellant again assured her that his diagnosis was right, but that to make sure, he would call in another doctor for consultation, and called in a Dr. Palmer, who also made an examination and declared that the ailment was cystic tumors and not pregnancy. Dr. Palmer had also been informed that both Dr. Dawson and Dr. Bourns had declared the case one of pregnancy.

This examination was made on January 31, and on the next morning, February 1, 1913, appellant procured Dr. Palmer to perform an operation. The surgeon merely made an incision about four inches long into the abdomen of Mrs. Just, examined the interior of the abdomen, found what appeared, and then closed the incision, sewed it up, and left her in the hospital for care. They did not find any cystic tumors. She remained in the hospital five days and was then removed to her home. On the 13th day after the operation, appellant came to her house and removed the stitches. Five weeks afterwards he came to her home, accompanied by both the Dr. Palmer who performed the operation and another Dr. Palmer, and made further examination to as-

certain whether or not she was actually pregnant, and the doctors all then heard, by means of the stethoscope, the fetal heart beats and were convinced that she was pregnant. Mrs. Just claimed that she suffered the pains of childbirth from the time of the operation until the birth of the child, on July 2, 1913, five months later, and that the birth of the child was delayed one month by reason of the operation, and that, by reason of that delay and her weakness and illness, the child was necessarily removed with forceps and later died. She contends that her health has been permanently injured by reason of the operation and that she is no longer able to perform her duties.

Respondents brought this action for damages in the sum of $6,200. The negligence alleged in their complaint is as follows:

"That the defendant unskillfully and negligently failed to apply the usual test, which, if so applied would have disclosed the condition as that of pregnancy, and failed and neglected to use proper care and skill, not only in the diagnosis of the case but failed and neglected to give the plaintiff, Mamie Just, proper care after the operation, in that he failed to visit and treat her but one time, and then only for the purpose of removing the stitches from the wound."

The jury rendered a verdict for respondents for $500.

Before issues were joined upon the facts, appellant moved to strike certain paragraphs and portions of paragraphs from the complaint, and to make the fifth paragraph more definite and certain by alleging specifically what test is referred to as "the usual test." There was no prejudice to appellant in the denial of all the motions to strike. The motion to make more definite and certain the allegation that appellant failed and neglected to apply "the usual test," should have been granted. What the pleader meant by "the usual test" might have been entirely different from what appellant or any reputable physician or obstetrician would mean by "the usual test," and, at most, pleaded nothing but a conclu-

sion, which upon motion directed to that purpose, the pleader should have been required to make definite and certain by stating the character of the "usual test" which respondents meant in charging appellant with negligent failure to use it. But on the trial, as the case developed, it did not appear that the appellant was in any way surprised or prejudiced, or prevented from procuring and introducing testimony upon the nature and informative value of "the usual test" in the early stages of pregnancy, which is simply the "bimanual test," or examination or palpation with the hands.

Our statute, Rem. & Bal. Code, § 1752 (P. C. 81 § 1255), requires this court "to hear and determine all causes . . . upon the merits thereof, disregarding all technicalities, etc." It not being made to appear that appellant was misled or surprised in any way to his disadvantage in the trial of the cause, this technical error of the court is now unavailing to him. Rem. & Bal. Code, §§ 307, 1752 (P. C. 81 §§ 303, 1255; *Rattelmiller v. Stone*, 28 Wash. 104, 68 Pac. 168; *Peterson v. Barry*, 50 Wash. 361, 97 Pac. 239.

The principal question here is, whether a physician is, as a matter of law, liable for a wrong diagnosis and ensuing treatment based thereon, even where there may be an honest difference of opinion among members of the medical profession as to the diagnosis, if the diagnostician proceeded with due care, skill and diligence in treating the patient. The law is, of course, well settled that a physician is liable for a wrong diagnosis of a case, resulting from a want of skill or care on the part of the physician, and followed by improper treatment, to the injury of the patient. But unless improper treatment follows, a wrong diagnosis gives no right of action. 30 Cyc. 1575; 22 Am. & Eng. Ency. Law (2d ed.), 802; 5 Thompson, Negligence, § 6717; *Richardson v. Carbon Hill Coal Co.*, 10 Wash. 648, 39 Pac. 95.

It is now well settled that a physician is entitled to practice his profession, possessing the requisite qualifications, and applying his skill and judgment with due care,

and is not ordinarily liable for damages consequent upon an honest mistake or an error of judgment in making a diagnosis, in prescribing treatment, or in determining upon an operation, where there is reasonable doubt as to the nature of the physical conditions involved, or as to what should have been done in accordance with recognized authority and good current practice. 30 Cyc. 1578; *Merriam v. Hamilton*, 64 Ore. 476, 130 Pac. 406; *Wells v. Ferry-Baker Lum. Co.*, 57 Wash. 658, 107 Pac. 869, 29 L. R. A. (N. S.) 426; *Coombs v. James*, 82 Wash. 403, 144 Pac. 536; *Lorenz v. Booth*, 84 Wash. 550, 147 Pac. 31.

Whether errors of judgment will or will not make a physician liable in a given case depends not merely upon the fact that he may be ordinarily skillful as such, but whether he has treated the case skillfully or has exercised in its treatment such reasonable skill and diligence as is ordinarily exercised in his profession. There is a fundamental difference in malpractice cases between mere errors of judgment and negligence in previously collecting data essential to a proper conclusion. If he omits to inform himself as to the facts and circumstances and injury results therefrom, then he is liable. 30 Cyc. 1579; *Staloch v. Holm*, 100 Minn. 276, 111 N. W. 264, 9 L. R. A. (N. S.) 712; *Johnson v. Winston*, 68 Neb. 425, 94 N. W. 607.

In the present case, appellant and another physician positively determined that the patient was afflicted with tumors. Another physician had previously positively determined that she was pregnant, of which diagnosis appellant was informed, according to respondents' case. After appellant's diagnosis, the first physician, and another physician consulting with him, again examined the patient and determined that she was pregnant and that she had no tumors, of which diagnosis, according to respondents' case, appellant was also informed. His response to this was that "the other doctors were crazy." It may well be conceded that the statements made by the patient to appellant were deceptive and calculated to deceive.

She did not believe, at the time of her examinations by any of the doctors, that she was pregnant. Her first "suspicion," according to her own statement, that she was pregnant occurred three weeks after the operation, when she first felt motion of a quick fetus. Prior to the operation she had menstruation, of which she no doubt informed the doctors who examined her. The expert testimony of both parties at the trial showed that the bimanual test may give indicative results during the fourth, fifth and sixth months; it is more uncertain in the earlier months; the same sensation may possibly result to the palpation of the physician's hands from tumors.; the same symmetrical development of the uterus may appear from the existence of a tumor; the mother feels quickening before an examiner can feel *bilottement* or rebound; there is often *bilottement* upon one examination during the fourth, fifth or sixth month, and none at other examinations about the same time. So that it is manifest that there might be utterly different, though thoroughly honest, opinions reached by physicians as to the patient's condition at or about the time of the examinations by these various doctors. Appellant's diagnosis proved to be wrong, and those of other physicians correct.

But did appellant exercise the proper care and diligence in advising, immediately upon his diagnosis, an operation for tumors? There is no complaint made of the operation itself as to the manner of its being performed. The matter of the ethics and propriety of appellant's conduct in proceeding with the operation without notifying the patient's former attending physician is immaterial. But the matter of appellant's notice that other competent and reputable physicians had positively declared that the woman was pregnant, is serious. Surely it put upon appellant a greater degree of diligence and care to be as certain as circumstances and conditions surrounding the case would admit of. Notwithstanding what she may have stated to the examining physicians, pregnancy is not an impossible or improbable condition to

the ordinary married woman of the age of thirty-seven years. Appellant urges, however, that the incision made was in the nature of an exploratory operation to determine the true condition of his patient. As to this, though no point was made of it, he had not the consent of the patient and her husband to make an exploratory operation. Their consent to operate was upon a positive assurance that tumors existed, and that an immediate operation was necessary to remove tumors. The appellant, having notice of a directly different diagnosis from his, the patient being a married woman of thirty-seven years living with her husband, not being past her climacteric period, it would seem he should not have hastily flouted the opinion of other reputable physicians that she was pregnant, but might have waited for a time, watching developments, making other examinations, and proceeding with considerable deliberation, unless the presence of tumors becoming more symptomatic, or injurious, rendered the operation therefor more imperative. At all events, it would seem that, whether appellant did, under the circumstances and conditions shown to exist, proceed with due and ordinary care in treating the patient, was a question of fact for the jury. The further questions of the damages for any unnecessary pain and suffering produced, as well as financial loss to both respondents, were also questions for the jury. We cannot say that the award of $500 was excessive.

Appellant urges that the court erred in not granting his request to require an examination of respondent Mrs. Just by physicians selected by appellant. That would have been gross error. It was, after some hesitation in this state, adopted by the courts as a rule that, in personal injury cases, when it was alleged that the injury was continuing or permanent, an examination of the injured person by a disinterested expert selected by the court could be required in the interest of exact justice. *Lane v. Spokane Falls & Northern R. Co.*, 21 Wash. 119, 57 Pac. 367, 75 Am. St. 821, 46 L. R. A. 153. That was done in the case at bar. A disinterested

physician was selected by the court, and plaintiff ordered to submit to examination by him, which she did. The evidence the expert selected by the court obtained from such examination was for either or both the parties, at their option. Both chose to avail themselves of his testimony by examining him upon subjects within the issues. This was within the respective rights of the parties, and there was no error, therefore, in the permission accorded by the court to respondents to fully question this physician upon hypothetical questions as to matters within the issues. He was no more appellant's witness than he was respondents' witness.

Appellant complains in his brief of the refusal of the court to give a certain instruction, and the giving of certain instructions by the court. The record does not show any exceptions taken by appellant at or before the time the motions for new trial were submitted to the court. Nor does the record show that appellant, on the last day to which the hearing of the motions for judgment *non obstante veredicto* or for new trial were adjourned, made a request for an extension of time to file exceptions, as stated in appellant's brief. The practice regarding the question is so well settled as to hardly require mention in this connection. We cannot consider errors based upon the giving or refusing to give instructions which were not excepted to within the time required by statute. Rem. & Bal. Code, § 339 (P. C. 81 § 587); *State v. Peeples*, 71 Wash. 451, 129 Pac. 108; *State v. Neis*, 74 Wash. 280, 133 Pac. 444.

Judgment affirmed.

Morris, C. J., Main, and Ellis, JJ., concur.