## PAULSON v STOCKER

Ohio Appeals, 5th Dist, Stark Co

Decided Oct 17, 1935

Lynch, Day, Pontius & Lynch, Canton, and John G. Ketterer, Canton, for plaintiff in error.

William B. Quinn, Canton, and Sherwood Ake, Canton, for defendant in error.

## OPINION

By SHERICK, J.

This is an action in malpractice instituted in the court of first instance by Ada ·M.

Stocker. It was her claim that the defendant "did not use due and proper care or skill in endeavoring to discover the cause of plaintiff's illness in making a diagnosis thereof, examining her and recommending the kind of treatment necessary to cure plaintiff of said illness." This claim of negligence was denied by the plaintiff in error.

Upon trial, and at the conclusion of the plaintiff's case, the defendant below moved for an instructed verdict This motion was overruled. It was renewed at the conclusion of all the evidence and again overruled. The cause was thereupon submitted to the jury with the result that it disagreed and failed to reach a verdict in favor of either party. The plaintiff in error prosecutes error to this court from the orders of the court refusing to direct a verdict in his favor upon his motions at trial for an instructed verdict.

This court has previously passed upon a motion made by the defendant in error to dismiss this proceeding for the reason that the orders complained of are not final orders within the contemplation of §12258, GC. That motion has been, of course, overrulled upon the authority of **Jacob Laub Baking Co. v Middleton, 118 Oh St, 106, 160 NE, 629.** That feature of this case will not be herein further discussed.

The plaintiff in error insists that the evidence in this case discloses no proof of any act of negligence upon his part in the diagnosis of his patient's ailment, and that it affirmatively appears that he exercised due care and diligence therein commensurate with that care and diligence required by the law in like cases of professional men with respect to their patients or clients. As a proposition of law, it is maintained with equal vigor, that a physician is not ordinarily liable for damages consequent upon an honest mistake or an error of judgment in making a diagnosis, if the method of treatment adopted has substantial medical support, irrespective of the consequences resultant from an incorrect diagnosis.

We are cited to a large number of authorities which are said to subscribe to this view, among which are included the case of **Havens v Hardesty, 18 C.C., 891, 9 C.D., 856.** It is said therein, that: "Errors of judgment and want of perfect information alone do not establish a liability against a physician for malpractice."

The rather abbreviated opinion of such case contains a further statement which is worthy of remembrance, in that it states: "It must be shown in cases like the one at bar that the physician failed to exercise the ordinary care and skill of his profession."

Our conception of the law of the case is found stated in 21 Ruling Case Law, 387. "To make a properly skillful and careful diagnosis of the trouble of a patient is one of the fundamental duties of a physician, and if he fails to bring to that diagnosis the proper degree of skill or care he must answer to the patient for the damages thus caused, just as readily as he must answer for the application of improper treatment."

The rather recent case of Cook v Moats, 121 Neb., 769, 238 NW, 529, 78 A.L.R., 694, follows that rule and holds, that: "Malpractice may consist in a lack of skill or care in making the diagnosis as well as in the treatment of the ailment."

To the same effect, see the case of Kuechler v Volgmann, 180 Wis., 238, 192 NW, 1015, 31 A.L.R., 826. This case is of further interest for the reason that it postdates that of Jaeger v Stratton, 170 Wis., 579, 176 NW, 61, which is relied upon in brief by counsel for plaintiff in error.

Two further authorities relied upon by the complainant will be noted, the first of which is Schumacher v Murray Hospital, 58 Mont., 447, 193 P., 397, and that court had this to say at page 467:

"Nor is an incorrect diagnosis of itself sufficient to establish liability. The plaintiff must show that such mistake was due to failure to use ordinary care and diligence and to exercise reasonable learning, skill and judgment in his examination and treatment."

In Brewer v Ring, 177 N. C., 476, 488 and 489, 99 SE, 358, also relied upon, the court quotes with approval from Just v Littlefield, 87 Wash., 299, 151 P., 780, Ann. Cas., 1917D, 705. It is said:

" 'The law is, of course, well settled that a physician is liable for a wrong diagnosis of a case, resulting from a want of skill or care on the part of a physician, and followed by improper treatment, to the injury of the patient. But unless improper treatment follows, a wrong diagnosis gives no right of action'."

Examining Just v Littlefield, supra, we find it determined that: "The negligence of a physician in erroneously diagnosing a case of pregnancy as cystic tumors, and in performing an operation for the latter complaint, is a question of fact for the jury, where it appears that he knew another physician had diagnosed the case as pregnancy."

Counsel for the physician lays undue emphasis on the thought expressed in some of the cases that there can be no recovery where a physician has acted "honestly" in the diagnosis of his patient's illness. It appeals to us that the use of the word "honestly" is inadvertent, for one may act through ignorance of what are ordinary care and diligence, yet be honest in his motive, his conclusions and his diagnosis. Or one might stubbornly disregard the conclusion of many other medical men, yet be honest in his interpretation of a patient's symptoms.

We therefore conclude that a physician may be liable for damages in a malpractice case as the result of a wrong diagnosis honestly arrived at, when that diagnosis is followed by treatment for the incorrect ailment, which injures his patient. Many things may and do enter into a consideration of what are due care and diligence in any given case, and the question as to whether a physician has used that care and diligence in a particular case is a question of fact for the jury, when such facts are in dispute or the circumstances of the case are such that it is problematical if due care and diligence have been employed in the diagnosis arrived at.

We recognize that several of the doctor's colleagues testified that he used that due care and diligence in his diagnosis and treatment of his patient which medical science approved of and required, but that proof can not warrant the direction of a verdict in his favor, if plaintiff's proof impeaches that evidence beyond the point of a mere scintilla, because on such a motion, plaintiff's evidence and the reasonable inferences deducible therefrom must be accorded its most favorable interpretation. From the record before us, let us gather some of these facts and inferences advantageous to the plaintiff's case.

It is evidenced that Mrs. Stocker was forty years of age; that she became ill; that she had ceased to menstruate upon a given date; that she was sick at her stomach and vomited excessively, all of which are conceded to be the first noticeable symptoms of early pregnancy; that two physicians examined her, both of whom suspected menopause or pregnancy, one of whom was a surgeon of high standing and long experience and who said that he would not disregard positive symptoms and unhesitatingly follow X-ray picture diagnosis in pregnancy cases, specially so in a woman of her age; that it was wiser to delay a few weeks and await development. Further, it is in evidence that excessive vomiting creates a tenseness and soreness in the lower abdominal regions, which otherwise would not be present; that pregnancy many times induces sympathetic reactions by other organs of the body, and it is not infrequent that gall bladder irritation or inflammation in some degree is present by reason of pregnancy and vomiting.

We find it proved that digital examination reveals later on certain signs, that is, a softening of the cervix and enlargement of the uterus; that these symptoms are frequently delayed where the expectant mother is of mature age and nearing menopause; that at from three and a half to five months after conception, it is possible to discover a thickening mass and to hear the fetal heart beat. At about the end of the three month period, Mrs. Stocker consulted Dr. Paulson. She questioned him whether she was not pregnant; that she fully advised him of all her positive symptoms; that she had seen two other physicians; that Dr. Paulson did not inquire concerning their diagnosis; that he examined her, insisting upon an X-ray and then an immediate operation for gall bladder trouble. He and all other professional witnesses admit that such an operation is a serious operation if the patient is pregnant and is always avoided except in acute disorders or in order to save life, and that it generally provokes an abortion. Mrs. Stocker's case was not acute, according to the defendant's evidence. She had had like trouble for a number of years. He did not advise the treatment to save her life, but insisted that she either submit to an operation or get another doctor. She was able, though ill, to ride back and forth for X-ray treatment.

A professional witness for the defense says that severe trouble in the gall bladder, accompanied by pus, is indicated by temperature. It is not shown that Dr. Paulson took Mrs. Stocker's temperature.

When the surgeon employed to operate made the incision, he quickly discovered that Mrs. Stocker was pregnant, that the gall bladder was affected no more than is usual in cases of pregnancy, and as the defendant says, she made quick recovery and left the hospital in eight days. The point is apparent that she survived and recovered from the operation in addition to the trials and discomforts of pregnancy, and within the usual period of gestation was delivered of a normal child with very little trouble, and as the defense says, she is in good health today.

It is also in evidence that Paulson relied upon his own diagnosis and the report of an X-ray specialist, who is not a practicing physician, and that he admitted that the pictures were "hooey" and that he was mistaken.

In the light of these facts, circumstances and inferences, it surely was a question of fact for a jury to determine if Dr. Paulson had used due care and diligence in making his diagnosis and the treatment followed. The motions should not have been sustained. The court did not err in overruling the same. We find no error in the respect claimed and the cause is remanded to the trial court for further proceedings.

Judgment affirmed.

LEMERT, PJ, and MONTOMERY, J, concur.