[No. 27072.   Department One.   December 7, 1938.]

G. E. PETERSON *et al., Appellants,* v. LEO J. HUNT, *Respondent.*[1]

*Vanderveer & Bassett,* for appellants.

*Robert E. Evans* and *S. A. Gagliardi,* for respondent.

MAIN, J.—This is a malpractice case.   It was tried to a jury and resulted in a verdict for the defendant. Motion for new trial being overruled, judgment was entered dismissing the action, from which the plaintiffs appeal.

[1]Reported in 84 P. (2d) 999.

The appellants, G. E. Peterson and Ruth V. Peterson, are husband and wife, and reside in the city of Tacoma. The respondent is a physician and surgeon, practicing his profession in the same city. Sometime during the fall of 1934, Mrs. Peterson, believing that she might be pregnant, went to the respondent for an examination. She and her husband say that this was in September. The respondent says that it was in November. The respondent made what is called a digital examination of the uterus. Here, again, the testimony is in direct conflict; Mrs. Peterson saying that the doctor told her she was pregnant; he says that he told her that she had an ovarian cyst, and this she denies. From time to time thereafter, Mrs. Peterson visited the office of the respondent and was examined, he telling her repeatedly that she was pregnant.

Upon the question of whether or not the respondent wrote prescriptions for Mrs. Peterson, the evidence is again in direct conflict, she saying that he did and he saying that he did not.

In April, 1935, Mrs. Peterson, having suffered severe pains during the previous month and having become very nervous and her abdomen being considerably extended, went, with her husband, to respondent's office, and her husband asked the doctor if there was not some way it could be definitely determined whether Mrs. Peterson was pregnant. The respondent, then, suggested that the rabbit test be employed. This was done and showed that there was no pregnancy. A little later, Mrs. Peterson was operated on, and the cyst, which was then about six inches in diameter and weighed approximately two pounds, was removed.

Upon the trial of this action, the appellants offered to prove the number of rabbit tests which a chemist, proprietor of a large biological chemical laboratory in Tacoma, had made since the year 1931, and the number

he had made in 1934, as well as the number of these tests he had made for the respondent during the year 1934. This testimony was rejected and presents the question upon this appeal. If the testimony was competent and material, the judgment cannot be sustained; on the other hand, if the ruling of the court was correct, then this appeal would result in an affirmance.

It is well settled that a physician must exercise that degree of care and skill which is ordinarily exercised by the members of his profession in the community where he practices, or similar communities, having due regard for the advance in medical and surgical science at the time. *Wharton v. Warner,* 75 Wash. 470, 135 Pac. 235; *Just v. Littlefield,* 87 Wash. 299, 151 Pac. 780, Ann. Cas. 1917D, 705; *Jaeger v. Stratton,* 170 Wis. 579, 176 N. W. 61; *James v. Grigsby,* 114 Kan. 527, 220 Pac. 267.

While, ordinarily, whether a physician has exercised the degree of care and skill which the law imposes upon him is established by professional opinion, this is not an invariable rule; there are instances where facts alone prove negligence and where it is unnecessary to have the opinion of persons skilled in a particular science to show unskilled and negligent treatment. *Cornwell v. Sleicher,* 119 Wash. 573, 205 Pac. 1059; *Jordan v. Skinner,* 187 Wash. 617, 60 P. (2d) 697; *Gross v. Partlow,* 190 Wash. 489, 68 P. (2d) 1034.

There is a difference in malpractice cases between mere errors of judgment and negligence in previously collecting data essential to a particular conclusion. If the physician omits to inform himself as to the facts and circumstances and injury results therefrom, he is liable.

In *Just v. Littlefield,* 87 Wash. 299, 151 Pac. 780, Ann. Cas. 1917D, 705, it is said:

"There is a fundamental difference in malpractice cases between mere errors of judgment and negligence in previously collecting data essential to a proper conclusion. If he omits to inform himself as to the facts and circumstances and injury results therefrom, then he is liable."

Having in mind the rule just stated and the previous one to the effect that there are instances where negligence may be inferred from the facts and where it is unnecessary to have the opinions of persons skilled in a particular science, we now come to the question as to whether the chemist should have been permitted to testify to the number of rabbit tests he had been employed to make during the year 1934 and previous years. The evidence shows that this test is 96% sure. It is employed by physicians in the city of Tacoma generally, in obscure cases. The respondent said that it was not in general use, but was an aid, and he from time to time had employed it. The professional opinion was in unity in stating that, where there was an ovarian cyst, the correct practice was to remove it, because there was no known cure, if the patient was not pregnant; on the other hand, if she was pregnant, the practice was to delay the operation, if it could be safely done, until after the birth of the child, because the operation, in all probability, would kill the child. In this case, the respondent said that he suspected pregnancy, as well as that she had a cyst, at the time he made the first examination. He also testified that it was a matter of first importance, when an ovarian cyst was discovered, to then find out whether the patient was pregnant.

The question, then, is reduced to whether the respondent, in failing to employ the rabbit test earlier than he did and relying on the digital examination, thereby neglected to collect data essential to a proper

conclusion. Had the fact been disclosed that the patient was not pregnant, the cyst could have been removed, and she would have been saved a long period of inconvenience and severe pain, resulting in a nervous condition.

Upon the question of whether the respondent was negligent in not applying the test earlier, the extent to which that test was applied in the city of Tacoma in similar cases had a material bearing. It has been repeatedly held that the failure on the part of physicians to take X-ray pictures, or have them taken, as an aid to a correct diagnosis, when X-ray machines are available and are commonly used by physicians in similar cases, may be actionable negligence. *Hoover v. McCormick,* 197 Ky. 509, 247 S. W. 718; *James v. Grigsby,* 114 Kan. 627, 220 Pac. 267; *Whitson v. Hillis,* 55 N. D. 797, 215 N. W. 480; *McBride v. Saylin,* 6 Cal. (2d) 134, 56 P. (2d) 941.

It is true that this court, in *Wells v. Ferry-Baker Lumber Co.,* 57 Wash. 658, 107 Pac. 869, 29 L. R. A. (N. S.) 426, held that the failure of a surgeon to make use of an X-ray machine to determine whether a patient's wrist was fractured was not negligence, under the particular facts in that case. It must be remembered, however, that, when that case was decided, almost thirty years ago, X-ray machines were not used as extensively as they are at the present time.

Applying the rule with reference to making use of the X-ray, it follows that the extent to which the rabbit test was applied in the city of Tacoma, was a material subject of inquiry, as bearing upon whether the respondent was guilty of negligence in failing to make use of it at an earlier date. The testimony offered and rejected was material and competent, and its rejection was prejudicial error.

The judgment will be reversed, and the cause re-

manded with direction to the superior court to grant a new trial.

STEINERT, C. J., HOLCOMB, BLAKE, and ROBINSON, JJ., concur.