Delores A. Pugh and Howard Pugh, Her Husband, Plaintiffs-Appellants, v. Henry S. Swiontek, M.D., Lawrence J. Sykora, M.D., and Berwyn Hospital Association, a Corporation, d/b/a MacNeal Memorial Hospital, Defendants-Appellees.

Gen. No. 52,557.

First District.

September 22, 1969.

B. John Mix, Jr., John E. W. Timm, and Andre Mandeville, of Chicago (B. John Mix, Jr., of counsel), for appellants.

Clausen, Hirsh, Miller & Gorman, of Chicago (John R. Caffrey and James T. Ferrini, of counsel), for appellees.

STOUDER, P. J.

Plaintiff-Appellant, Delores Pugh, commenced this action in the Circuit Court of Cook County seeking to recover damages for the alleged medical malpractice of physicians Henry S. Swiontek and Lawrence J. Sykora, Defendants-Appellees. At the close of the plaintiff's evidence in a trial before a jury the court, pursuant to motion of defendants, directed the verdict in favor of defendants. From the judgment entered thereon plaintiff has appealed.

Since the principal issue is the sufficiency of the evidence to warrant the submission of the issues to the jury, a summary of the evidence is required.

Delores Pugh first came under the care of Dr. Swiontek in 1957. He delivered her third child in September, 1958, and her fourth child on August 19, 1959. Following the birth of her child on August 19, 1959, she experienced post-delivery discharge for six weeks which thereafter stopped for two weeks and then started again for two more weeks. Thereafter, she had what was to all appearances a menstruation period on December 1, 1959; that incident of bleeding differed from her ordinary periods only in that its duration was longer, nine days. During the night of December 12 or 13, she was awakened by sharp abdominal pains and the onset of bleeding. She testified that she also felt nauseous and dizzy. Her condition became worse and the symptoms so severe that she was taken by her husband to MacNeal Memorial Hospital on December 31, having unsuccessfully tried to get in touch with Dr. Swiontek. She was examined at the hospital by a resident physician to whom she related her history and symptoms. She was given shots and returned home. On January 2, she saw Dr. Swiontek who examined her and after repeated calls dur-

ing the week, she was hospitalized commencing on January 5, 1960. Dr. Swiontek, a general practitioner, called in Dr. Sykora, a specialist in obstetrics and gynecology, as a consultant, January 6, 1960. The doctors decided to perform a dilation curettage (D & C) for diagnostic purposes, the results thereof being negative so far as indicating any cause of plaintiff's condition. Plaintiff's condition of ill health after her release from the hospital on January 10 continued and she was again hospitalized on January 17, 1960, and she was again examined and treated by defendants. During this period a lump or mass was observed on one side of her abdomen, which decreased while she was in the hospital, and she was discharged on January 26, 1960. About one week later, plaintiff went to Chicago Lying-In Hospital, where after examinations and tests (including pregnancy tests) a laparotomy was performed by Dr. Davis. The operation revealed a mass on each side consisting of blood clots. The masses appeared to be the result of bleeding in the abdominal cavity. He also found a mass, the size of a three and one-half-month gestation, approximately 10 centimeters in diameter. These large masses were adherent to the environmental structures in the area. The structures were stuck together as a result of bleeding and clotting in the abdomen. The bleeding had resulted from a rupture of the fallopian tube caused by a pregnancy in the fallopian tube. The surgeon removed the tube and ovary on the left side and because of the damage caused by the clotted blood, also removed the ovary and tube on the right side because the blood supply had been seriously interfered with in that area, as well. The uterus was also removed.

Delores Pugh's condition was first diagnosed on December 31, 1959, by the resident at MacNeal Memorial Hospital as endometritis, or inflammation of the uterus. This was also the diagnosis of Dr. Swiontek on January 2, 1960. Her condition was diagnosed by Dr. Swiontek and Dr. Sykora during her hospitalization from January 5 to Jan-

uary 10 as "hyperplastic endometrium" and their diagnosis of her condition during her hospitalization commencing on January 17, 1960, was ovarian abscess. No pregnancy test was given plaintiff while she was under the care of defendants subsequent to January 1, 1960.

The testimony presented by the plaintiff consisted of her testimony, the testimony of Dr. Davis and that of the two defendants, elicited under section 60 of the Civil Practice Act (c 110, Ill Rev Stats 1967).

The gist of plaintiff's charge is that defendants negligently diagnosed her condition, which negligence resulted in her injury, namely, the unnecessary removal of certain of her organs. Defendants, on the other hand, in support of the trial court's action, argue that direction of the verdict was proper because plaintiff failed to prove either first, that the misdiagnosis was negligent or second, that such misdiagnosis was the cause of plaintiff's injury.

There is no dispute concerning the general principles applicable to the liability of physicians and surgeons. The plaintiff, in order to prevail, must show first, that defendant was unskillful and negligent and second, that such want of skill and care caused the injury to the plaintiff. Gault v. Sideman, 42 Ill App2d 96, 191 NE2d 436; Olander v. Johnson, 258 Ill App 89, and Wallace v. Yudelson, 244 Ill App 320. A physician or surgeon is bound to possess and use reasonable skill, not perhaps the highest degree of skill that one learned in the profession may acquire, but reasonable skill such as physicians in good practice ordinarily use and would bring to a similar case. Schireson v. Walsh, 354 Ill 40, 187 NE 921. The exercise of skill and care is applicable to diagnosis as well as treatment. Church v. Adler, 350 Ill App 471, 113 NE2d 327.

As correlaries to the foregoing rules, it can also be said that a physician is not an insurer of satisfactory results, that unsuccessful results are not evidence of neg-

ligence and that mere mistakes or errors are not negligence. Scardina v. Colletti, 63 Ill App2d 481, 211 NE2d 762, and Piacentini v. Bonnefil, 69 Ill App2d 433, 217 NE2d 507. Where, as in the instant case, there is admittedly a misdiagnosis, the question remains as to whether such misdiagnosis was the exercise of a reasonable medical judgment or a judgment arrived at without the exercise of appropriate care.

There do not appear to be any Illinois cases dealing with the misdiagnosis of pregnancy, generally, or a tubal pregnancy in particular. Defendants have directed our attention to Langford v. Jones, 18 Ore 307, 22 P 1064, and Pilgrim v. Landham, 63 Ga App 451, 11 SE2d 420, in support of their contention that the misdiagnosis was not the result of their failure to exercise reasonable skill and care. In the Langford case, plaintiff had a uterine tumor, which had been diagnosed several months prior to its removal by an operation performed by defendant. At the time of the removal of the tumor it was discovered that plaintiff was also pregnant. The court concluded that the failure to diagnose plaintiff's pregnant condition was not the result of negligence, first because the painful nature of the tumor made intercourse and hence, pregnancy unlikely, and second, the removal of the tumor would have been appropriate treatment even had the pregnancy been known. It should be observed that in the Langford case the defendant did remove a large tumor which had been diagnosed, and the case is not strictly speaking, a misdiagnosis case. In the Pilgrim case, the court affirmed a directed verdict in favor of defendant physician and concluded that a bimanual examination was the exercise of sufficient skill, even though plaintiff was pregnant rather than having a tumor as diagnosed. Although the Pilgrim case discusses the judgment to be exercised in diagnosis, this is a referral case which in substance holds that a physician to whom a patient is referred for particular treatment (in this case x-ray treatment of a tumor),

31

such physician is entitled to rely on the diagnosis of the referring physician. The aforementioned cases are illustrative of situations where physicians are deemed as a matter of law to have exercised reasonable skill and care in the diagnosis made. The only conclusion that can be drawn from such cases is that under the facts thereof, the misdiagnosis of pregnancy did not result from the failure of the physicians to exercise due skill.

However, there are many other cases in which the circumstances leading up to a misdiagnosis of pregnancy were held sufficient either to warrant submission to a jury or to support a jury's award in favor of plaintiff. Paulson v. Stocker, 53 Ohio App 229, 4 NE2d 609; Jarboe v. Harting (Ky), 397 SW2d 775; Gottschall v. Geiger, 207 Mo App 89, 231 SW 87; Stevenson v. Yates, 183 Ky 196, 208 SW 820, and Burks v. Baumgartner, 72 NM 123, 381 P2d 57. The aforementioned cases each involve misdiagnosis of normal intrauterine pregnancies. In Sprouse v. Magee, 46 Idaho 622, 269 P 993, Smith v. Shankman, 208 Cal App2d 177, 25 Cal Rptr 195, and McHugh v. Audet, 72 F Supp 394 (applying Pennsylvania law), evidence relating to misdiagnosis was held sufficient to warrant submission to jury where the misdiagnosis related to an ectopic or tubal pregnancy. McHugh v. Audit, supra, involved a diagnosis of ovarian abscess, but upon operation it was discovered that patient was suffering from a ruptured fallopian tube caused by pregnancy therein, from which condition the plaintiff died.

■■ Where there has been a diagnosis of some condition other than pregnancy when in fact, the patient was pregnant, the principal issue appears to be whether the true condition could and should have been discovered in the exercise of reasonable skill and care. In the instant case, the three physicians who testified agreed that the book "Obstetrics" from the original text of Joseph B. De-Lee, by J. P. Greenhill, is a recognized medical text and authority in Cook County, Illinois. Defendant Dr. Sykora,

agreed with the following statement from the Greenhill text. "When a woman in the reproductive period after some irregularity of the menses, complains of cramping pain in the lower parts of the abdomen with irregular uterine bleeding of brownish color, ectopic pregnancy should be suspected and if sudden excruciating pelvic pain occurs with dizziness, faintness, collapse, the diagnosis is almost certain and is confirmed by the finding of an extra-uterine mass or the discharge of a uterine decidua." Dr. Sykora did not agree with the following quotation from Greenhill, "Whenever the diagnosis is uncertain, the patient should be hospitalized for observation and a pregnancy test." Dr. Sykora stated that if he thought a person definitely had an ectopic pregnancy, it would be a correct statement.

In reviewing the record, it appears that defendants dispute neither the fact of misdiagnosis nor the prevailing standards relating to the diagnosis of ectopic pregnancy. Rather, they argue it is undisputed that they exercised reasonable skill and care in considering ectopic pregnancy and that the adoption of their diagnosis represented the exercise of reasonable skill and care. In this respect we do not believe the record supports defendants' contentions. Viewing the evidence in the record most favorably to plaintiff, we believe there is ample evidence (both disputed and undisputed), from which it can be reasonably inferred that defendants did not consider the possibility of a tubal pregnancy under circumstances where reasonable skill and care would have required such consideration or failed to use reasonable skill and care in the confirmation or exclusion of such diagnosis. In this connection, it should be noted that admittedly all of the classic symptoms relating to ectopic pregnancy were presented. Yet it may be inferred from the testimony of the defendants themselves, which is in some respects vague and ambiguous, that the defendants did not discuss between themselves the possibility of ectopic

pregnancy or conduct any examination with respect thereto.

We believe that plaintiff made out a prima facie case of negligence and that there is sufficient evidence from which it may be inferred that the alleged negligence was the cause of the condition complained of. There is testimony in the record that in the event of a tubal pregnancy, an operation performed before rupture of the tube usually results in a normal tube and ovary which would be left within the patient's body. Further, if the operation were to occur shortly after a rupture so that the pelvis and the abdominal cavity did not fill with coagulated blood, it would be possible to save the other ovary. We also believe that it is fairly inferable from the evidence that the tube had not ruptured prior to examination, diagnosis and treatment by the defendants. Accordingly, the relation between the defendants' conduct and the result cannot be said to be merely speculative or conjectural.

For the foregoing reasons, we believe the Circuit Court of Cook County erred in directing a verdict for the defendants and accordingly, the judgment of the Court is reversed and remanded with directions that the plaintiff be granted a new trial.

Reversed and remanded with directions.

ALLOY, P. J. and RYAN, J., concur.