[No. 6006. Decided February· 26, 1906.]

C. O. PETERSON, *Appellant,* v. R. A. WELLS *et al., Respondents.*[1]

MALPRACTICE—NEGLIGENCE IN SETTING BROKEN LEG—EVIDENCE—SUFFICIENCY—QUESTION FOR JURY. In an action for malpractice in setting a broken leg a *prima facie* case of want of skill and diligence is shown, and it is error to grant a nonsuit, where it appears from the testimony of the plaintiff that when the plaster cast was removed, after four weeks, the leg was found to be crooked and the plaintiff was very lame, walking on the side of the foot, that he went to a hospital and the leg was rebroken and reset, after which his condition was very much improved, and where an expert testified to the effect that if the leg was crooked when the case was removed it indicated something more than "a bad result" and that it had not been treated with ordinary skill.

Appeal from a judgment of the superior court for Stevens county, Carey, J., entered July 10, 1905, in favor of the de-

1Reported in 84 Pac. 608.

fendants, upon granting a nonsuit at the close of plaintiff's case, in an action to recover damages for malpractice. Reversed.

*Robertson, Miller & Rosenhaupt,* and *J. A. Rochford,* for appellant.

*Kellogg & Neal,* for respondents, contended, that, if ordinary diligence and skill is brought to the treatment of an injury, the physician is not responsible for unfavorable results. *Sawdey v. Spokane Falls etc. R. Co.,* 30 Wash. 349, 70 Pac. 972; *Ewing v. Goode,* 78 Fed. 442; *Jackson v. Burnham,* 20 Colo. 532; *Sims v. Parker,* 41 Ill. App. 284; *Jones v. Angell,* 95 Ind. 376; *Patten v. Wiggin,* 51 Me. 594, 81 Am. Dec. 593; *Martin v. Courtney,* 75 Minn. 255; *Williams v. Poppleton,* 3 Ore. 139; *Grindle v. Rush,* 7 Ohio, pt. 2, 123; *McDonald v. Harris,* 131 Ala. 359, 31 South. 548; *Force v. Gregory,* 63 Conn. 167, 38 Am. St. 371; *Akridge v. Noble* 114 Ga. 949, 41 S. E. 78; *Utley v. Burns,* 70 Ill. 162; *Kendall v. Brown,* 74 Ill. 232; *Leighton v. Sargent,* 27 N. H. 460, 57 Am. Dec. 388. The mere fact that no cure was effected does not create a liability nor raise a presumption of want of proper care or skill. *Tefft v. Wilcox,* 6 Kan. 46; *Haire v. Reese,* 7 Phila. 138; *Alder v. Buckley,* 1 Swan 69. The law accords the medical practitioner the presumption that he has done his duty, and the burden is on the plaintiff to prove want of reasonable care or skill, and also that the injury complained of resulted from such want of care or skill. *State v. Housekeeper,* 70 Md. 162, 14 Am. St. 340, 2 L. R. A. 587; *Styles v. Tyler,* 64 Conn. 432, 30 Atl. 165; *Georgia Northern R. Co. v. Ingram,* 114 Ga. 639, 40 S. E. 708; *Holtzman v. Hoy,* 118 Ill. 534, 59 Am. Rep. 390; *McKey v. Allen,* 96 Ill. App. 147; *Martin v. Courtney,* 87 Minn. 197, 91 N. W. 487; *Robinson v. Campbell,* 47 Iowa 625; *Scudder v. Crossan,* 43 Ind. 343; *Getchell v. Hill* 21 Minn. 464; *McCandless v. McWha,* 25 Pa. St. 95; *Vanhooser v. Berghoff,* 90 Mo. 487, 3 S. W. 72. Expert questions should be based

upon facts proved and not upon conjecture. *Steagald v. State,* 24 Tex. App. 207; *Smalley v. Appleton,* 75 Wis. 18, 43 N. W. 826; *Filer v. New York Cent. R. Co.,* 49 N. Y. 42; *Collins v. Janesville,* 99 Wis. 464, 75 N. W. 88.

RUDKIN, J.—This action was brought to recover damages for malpractice. On the 14th day of January, 1904, the plaintiff sustained a fracture of both bones of the left leg, at or near the ankle joint, while taking out limestone for the Northport Smelter. The accident occurred about eleven o'clock in the forenoon, and the plaintiff was immediately removed to the Northport hospital, conducted by the defendants, for treatment. About four o'clock in the. afternoon of the same day, the defendants set the bones, and placed the leg in a plaster cast extending from the knee down over the foot. The leg remained in this cast for about four weeks, and the plaintiff remained at the hospital for about two weeks after the cast was removed. After he left the hospital he stopped at the hotel in Northport for about a week, and then went to the quarry where he had been working prior to the injury, and remained about two months.

According to the testimony of the plaintiff and his witnesses, when the plaster cast was removed the leg was crooked, curving in at the ankle, so that the plaintiff walked on the inside of the ball of the foot and heel, and was very lame. After the plaintiff left the quarry, some three or four months after the injury, he went to Spokane and consulted Dr. Newman, who was a witness in his behalf at the trial. The doctor made a somewhat cursory examination of the leg, and inasmuch as the plaintiff was without means, the doctor advised him to go to the county physician. Soon after this the plaintiff went to a hospital in Spokane, and there the bones were rebroken and reset. The condition of the leg was materially improved by this second operation. At the close of the plaintiff's case, the court granted a nonsuit, and from the judgment of nonsuit this appeal is taken.

The appellant contends that he made out a prima facie case of negligence or want of skill on the part of the respondents, and that he was entitled to have his case submitted to the jury. The respondents, on the other hand, contend that the appellant proved nothing more than a "bad result," and that this of itself is no evidence of want of care or skill in actions of this kind.

"The contract implied by law from the mere employment of a surgeon is that he will treat the injury he is employed to treat with ordinary diligence and skill. This requires that he bring to its treatment such a degree of skill and diligence as surgeons practicing in the same general neighborhood, in the same line, of practice, ordinarily have and exercise in like cases." *Sawdey v. Spokane Falls etc. R. Co.,* 30 Wash. 349, 70 Pac. 972.

He does not undertake to effect a cure, or restore a broken limb to its normal condition. If he treats the injury with a reasonable degree of skill and care he is not responsible for the results. The testimony in this case as to the nature of the fractures was very general, and if nothing further was shown than the "bad result," as contended by the respondents, the judgment below was doubtless right; but we cannot agree with the respondents that nothing beyond a bad or unfavorable result was shown. It was further proved that a second operation was performed in which the bones were rebroken and reset, and that the second operation resulted in a very considerable improvement in the condition of the leg. This of itself was some evidence of negligence or want of skill in the first treatment, and would probably carry the case to the jury, without more. *Sawdey v. Spokane Falls etc. R. Co., supra.* In addition to this, however, Dr. Newman who examined the leg after the first treatment, and before the second, testified as follows:

"Q. Doctor, take the case of a simple fracture where the limb is encased in a plaster cast and when the cast is taken off the limb is crooked like you say you found this one

when you examined it, would you say that the limb had been treated with the ordinary skill usually exercised by practitioners in treating a case of that kind? A. Well, of course if it was like that when the cast came off of course I don't know, why, necessarily, it would follow that it was a bad result. Q. What would you say as to the skill exercised in treating it? A. Well it would not look good; of course it would not look like the treatment did it, but it would look like it had not been straightened in the first place when it was put up unless some accident had happened to it in the meantime to bend it. Of course in a case like that the bones would not be solid yet and it would be very easy to straighten it at that time by breaking it over. Q. Would you say that the case had received the ordinary diligence and skill that a case of that kind usually receives among the medical profession. A. Well, if the man had not been walking on the leg, or if the plaster had been solid enough to hold it there it could not have happened; if it was straight in the first place, I would not consider it a good case. Q. Take the result as you found it, and conceding that the patient had been ordinarily careful, had not walked on the limb and there were no complications, what would you say then as to whether or not it had been treated with the ordinary skill and diligence which a physician would use? A. You say assuming it was in that position when the cast came off? Q. Yes, sir. A. That is a hypothetical question? Q. Yes, sir. A. I should say no, it had not been treated with ordinary skill. Q. Is it usual to find a leg or limb crooked at the time the splints or the plaster is removed? A. No, certainly not. Q. If a limb were in a position crooked as this one was when you found it at the time the cast was taken off, what would be the probability of its straightening up after that time? A. It would get worse instead of straighter," etc.

After a searching cross-examination of the appellant, nothing was adduced tending to show that any act of his contributed in any way to the unfavorable results produced by the respondents' treatment, and we are clearly of opinion that a *prima facie* case of want of diligence or skill on the part of the respondents was made out, and that the case should have been submitted to the jury.

For the error in granting the nonsuit the judgment is reversed and a new trial ordered.

MOUNT C. J., FULLERTON, HADLEY, and CROW, JJ., concur.