[No. 26204. Department Two. September 15, 1936.]

PATRICIA MYLBRA JORDAN, *by Melvin R. Jordan, her Guardian, Appellant,* v. H. H. SKINNER *et al., Respondents.*[1]

*E. L. Bennett* and *Charles F. Bolin,* for appellant.

*Grady & Velikanje* and *Stanley P. Velikanje,* for respondent.

*Cheney & Hutcheson, amicus curiae.*

[1]Reported in 60 P. (2d) 697.

BLAKE, J.—Patricia Mylbra Jordan was born January 25, 1931, at a hospital in Yakima. Prior to her birth, the defendant H. H. Skinner, a physician, was employed to attend at the accouchement. Four days after the child's birth, she developed an infection of the eyes, which resulted in total blindness of the right, and fifty to seventy-five per cent impairment of vision in the left.

This action was brought, charging that the infection and its result were caused by negligence on the part of defendant in caring for the child at and after birth. The defendants answered, denying negligence. Trial was had to a jury, which disagreed. Thereafter, the defendants interposed a motion for judgment on the ground that the evidence received at the trial was insufficient to sustain a verdict for plaintiff. (Precedent for this procedure is to be found in *Fobes Supply Co. v. Kendrick,* 88 Wash. 284, 152 Pac. 1028.) The court granted the motion, and entered judgment dismissing the action, from which plaintiff appeals.

The sole question to be determined is whether there was substantial evidence in support of any of the charges of negligence. In determining the question, we, of course, must consider the evidence in the light most favorable to appellant. From the evidence, the jury might have found the following facts:

Ophthalmia neonatorum is an infection in the eyes of the new born. Although the term may be applied to any infection, it is generally accepted as indicating the presence of gonococci. As a precautionary measure, the state health regulations require that at birth a solution of silver nitrate or argyrol shall be dropped into the eyes of an infant. This is also standard practice in the absence of state regulation. (Under the state health regulations, this is regarded as a specific against gonorrheal infection.) Where the prophylactic

is used, ophthalmia neonatorum develops in only one case in a thousand; where it is not used, the infection develops in ten per cent of the cases.

In the case of appellant, the prophylactic was not used. In the afternoon of the third day, the mother noticed that the eyelashes of the baby's left eye were covered with matter and stuck together. The next day she spoke of the condition to respondent, who told her he would take care of the child's eyes; that he thought the condition was the result of a cold. The condition, however, gradually grew worse, the purulent discharge increasing day by day. On February 4th, the mother and child left the hospital. On leaving the hospital, the mother was advised by a nurse to put one drop of five per cent argyrol in the baby's eyes twice a day, and wash them every three hours with a solution of boric acid. On February 6th, the right eye became affected. On the seventh, the purulent discharge was streaked with blood.

From then on, the discharge increased and the eyes became more badly inflamed, until Saturday, February 14th, when respondent advised the parents to take the child to Doctor Bline, an eye specialist. (Doctor Bline was in partnership with respondent.) They attempted to get in touch with Doctor Bline that day, but were told the doctor could not see them until Monday. On Monday, the sixteenth, Doctor Bline saw the child. He took a smear of the pus, upon which he got a laboratory report to the effect that there were no gonococci present. A few days later, another smear showed the same result. (The fact that the laboratory report on the smears is negative does not eliminate a diagnosis of gonorrheal infection, if a clinical examination indicates the contrary.) He diagnosed the condition as conjunctivitis and attributed it to closure of the nasal ducts. By February 21st, ulcers had formed on

the cornea. Doctor Bline continued to treat the child until the following August.

Prior to telling the parents to take the child to Doctor Bline, respondent made no suggestions as to the treatment of the baby's eyes. He did say that the condition was nothing to worry about. On being asked if too much argyrol could be put in the eyes, he said no.

There was no direct testimony that the child was suffering from a gonorrheal infection. A number of experts testified that the treatment given by the parents was proper and adequate for the condition described. This testimony undoubtedly was predicated on the assumption that the infection was not gonorrheal. As we read the testimony of the experts, we think it may be conclusively inferred that the treatment was utterly inadequate if the infection was due to gonococci.

So the question is: Do the facts stated justify the conclusion that the child was suffering from a gonorrheal infection, in the absence of expert testimony to that effect?

As a general rule, a question involving scientific or medical knowledge must be determined by testimony of experts. *Dahl v. Wagner,* 87 Wash. 492, 151 Pac. 1079; *Dishman v. Northern Pac. Beneficial Ass'n,* 96 Wash. 182, 164 Pac. 943; *Howatt v. Cartwright,* 128 Wash. 343, 222 Pac. 496. But there are exceptions to the rule. *Helland v. Bridenstine,* 55 Wash. 470, 104 Pac. 626; *Wharton v. Warner,* 75 Wash. 470, 135 Pac. 235; *Cornwell v. Sleicher,* 119 Wash. 573, 205 Pac. 1059. In the case last cited, the court, commenting on the holding in *Wharton v. Warner, supra,* said:

"It was held that it did not require expert evidence to prove that the act was negligent, but, on the contrary, the jury had abundant justification to so find

from proof of the fact alone. Other illustrations might be given, but the one is enough to make clear the point that there must be, in the nature of things, many instances where the facts alone prove the negligence, and where it is unnecessary to have the opinions of persons skilled in the particular science to show unskillful and negligent treatment.''

The following from *Helland v. Bridenstine, supra,* is peculiarly pertinent here:

''There was here, we think, sufficient evidence on the questions of the appellant's negligence, whether the respondent had actually become infected with gonorrhea, and whether the disease was communicated to her by means of the instruments the appellant had used upon her person, to require their submission to the jury. The respondent was not required to prove her case beyond a reasonable doubt, nor by direct and positive evidence. It was only necessary that she show a chain of circumstances from which the ultimate fact required to be established is reasonably and naturally inferable. If it be true (and whether or not it is true was for the jury) that the respondent went to the appellant's office free from gonorrhea; that the appellant introduced into her vagina a speculum, which he used on other patients, without cleansing or sterilizing it, and that within the time thereafter usual for such a disease to generate, she became afflicted with the disease, and there was no other known source of infection, it is a reasonable inference that she caught the disease from the instrument used upon her by the appellant, and that the disease was negligently communicated to her. Nor is the inference so far overcome by the evidence of the expert witnesses as to require the court to take the question from the jury.''

The case at bar falls within the rule of the three cases last cited. There was ample evidence from which a jury might find that the prophylactic required by the state health regulations was not administered. That would constitute negligence, viewed either as a violation of the state health regulations or as a depar-

622

ture from accepted practice. Whether the infection was gonorrheal, and whether it was the proximate result of such negligence, are, under the facts developed by the evidence, for the jury to say.

The judgment is reversed, and the cause remanded for further proceedings.

MILLARD, C. J., MAIN, STEINERT, and BEALS, JJ., concur.